NORTHWESTERN IRON COMPANY, Respondent, vs. INDUS-
TRIAL COMMISSION OF WISCONSIN and another, Appel-
lants.

*May 2—May 31, 1913.*

*Workmen's Compensation Act: Construction: When husband and wife
are "living together:" Intent: Presumption of dependency: In-
dustrial Commission: Finding of fact or conclusion of law?*

1. In construing the Workmen's Compensation Act words ·are to
be given the meaning which they have in common language,
taking into consideration the text and the subject matter rela-
tive to which they are employed.
2. Husband and wife are "living together," within the meaning of
sub.· 3, sec. 2394—9, Stats. (which under such circumstances
dispenses with proof of total dependency), when there is no
legal separation and no actual separation in the nature of an
estrangement, although they may not be physically dwelling
together. So *held* in a case where a man came to this country
more than three years before his death, leaving his wife in Aus-
tria-Hungary, but continued to correspond with her and send
her money.
3. The question does not turn in such a case upon time or distance,
but upon the nature and character of the absence and the in-
tention of the parties respecting it.
4. The question of intent is ordinarily a question of fact.
5. Findings of the Industrial Commission on questions of fact
should not be disturbed by the courts if there is a substantial
basis for its decision.
6. "Findings of fact" mean findings of ultimate rather than evi-
dentiary facts.
7. It is only when the facts are undisputed and no conflicting infer-
ences respecting the ultimate fact can be drawn therefrom
that the question whether husband and wife were "living to-
gether" becomes a question of law. BARNES, J., dissents.

APPEAL from a judgment of the circuit court for Dane
county: E. RAY STEVENS, Circuit Judge. *Reversed.*

This is an appeal by defendants from a judgment entered
February 14, 1913, setting aside an award of the *Industrial
Commission* made July 1, 1912. The award provided that

plaintiff pay to the defendant *Jela Nevadjic* the sum of $2,100 on account of the death of her husband by reason of injuries accidentally sustained by him while in the employ of the plaintiff. The award was based on a finding of the *Commission* that *Jela Nevadjic* was living with her husband at the time of his death. The circuit court first decided that, although the finding of the *Commission* that *Jela Nevadjic* was living with her husband at the time of his death was erroneous, still the award should be confirmed because there was evidence to support the *Commission's* finding of total dependency without regard to the statutory presumption.

A motion for rehearing was made in the circuit court based upon an affidavit of the plaintiff's attorney setting forth correspondence with the chairman of the *Industrial Commission* showing that the *Commission* "determined that the wife was totally dependent simply because of the statutory presumption following its finding of fact that Nevadjic was living with his wife at the time of his death."

·On rehearing the circuit court adhered to its decision that *Jela Nevadjic* was not living with her husband at the time of his death, but found that the *Commission's* finding of total dependency was based solely upon the statutory presumption; and further found that in making such findings and the award the *Commission* acted without or in excess of its powers, and entered judgment setting aside the award of the *Commission.* The *Industrial Commission* made the following findings: ·

"That on February 25, 1912, while in the employ of the respondent [plaintiff here], one Prokopia Nevadjic accidentally sustained personal injuries by reason of a car of ore being dumped upon him, from the result of which he died, at Mayville, Wisconsin; . . . that the said deceased, Prokopia Nevadjic, came to this country some three years and three months prior to his death, leaving in his native country, Austro-Hungary, in the province of Korenica, a wife and one child; after coming to this country, the said deceased,

Prokopia Nevadjic, did not return to his wife, but did occasionally send her money, and on February 8, 1912, shortly before his death, sent her the sum of $21; that deceased could not write, and the wife of deceased could not write, but they corresponded with each other through the aid of friends; and we find from these facts that the deceased Prokopia Nevadjic and the above named *Jela* or *Jelena Nevadjic,* his wife, were living together at the time of the death of said deceased, and the said *Jela* or *Jelena Nevadjic* was solely and wholly dependent for support upon the deceased, Prokopia Nevadjic."

It also appears from the evidence that Prokopia Nevadjic came to Mayville and "was employed by the *Northwestern Iron Company* on the 7th of November, 1911;" that he sent $30 to his wife "when he first came to Mayville;" that he said if "I don't send money every three months, my wife can't make a living;" that he sent $21 to his wife February 8, 1912, an interval of exactly three months from the time of his previous remittance.

For the appellant *Industrial Commission* there was a brief by the *Attorney General* and *Byron H. Stebbins,* first assistant attorney general, and oral argument by *Mr. Stebbins.* To the point that the *Commission* construed the statute correctly, they cited, among other cases, *Cowan v. Cowan,* 10 Colo. 540, 16 Pac. 215, 221; *Levy v. Goldsoll* (Tex. Civ. App.) 131 S. W. 420, 421; *Ex parte Gilmore,* 54 Eng. Com. Law, 967; *Phillips v. Phillips,* 22 Wis. 256, 257; *Thompson v. Thompson,* 53 Wis. 153, 157, 10 N. W. 166; *Williams v. Williams,* 122 Wis. 27, 31, 99 N. W. 431; *Burk v. Burk,* 21 W. Va. 445, 450; *Miller v. Sovereign Camp W. O. W.* 140 Wis. 505, 508, 122 N. W. 1126; *Smith v. Smith,* 35 Ind. App. 610, 74 N. E. 1008, 1012; *Jonas v. Hirshburg,* 18 Ind. App. 581, 48 N. E. 656, 658.

*Edward G. Wilmer,* for the respondent, cited, among other authorities, 36 Cyc. 1106, 1114; sub. 1, sec. 4971, Stats.; 19 Am. & Eng. Ency. of Law (2d ed.) 427; *Yardley's Es-*

*tate,* 75 Pa. St. 207; *Sullivan v. State,* 32 Ark. 187; *Calef v. Calef,* 54 Me. 365; 7 Cyc. 272; *Tracy v. Tracy,* 62 N. J. Eq. 807, 810, 48 Atl. 533; *Dutcher v. Dutcher,* 39 Wis. 651, 659; *Mut. Ben. L. Ins. Co. v. Robison,* 58 Fed. 723, 732; *Paltrovitch v. Phœnix Ins. Co.* 68 Hun, 304, 23 N. Y. Supp. 38; *Bird v. State,* 27 Tex. App. 635, 637, 11 S. W. 641; *Hanson v. Hanson,* 111 Mass. 158; *Kendall v. Miller,* 47 How. Pr. 446.

KERWIN, J.    The judgment of the court below setting aside the award of the *Industrial Commission* rests upon the conclusion of the court that the *Industrial Commission* acted without or in excess of its powers in finding that the appellant *Jela Nevadjic* was living with her husband at the time of his death.    The question therefore presented on this appeal is whether the *Commission* acted without or in excess of its powers in making such finding.

Sub. 3, sec. 2394—9, of the Workmen's Compensation Act provides a death benefit "in case the deceased employee leaves a person or persons wholly dependent on him for support."

Sub. 3, sec. 2394—10, provides:

"3. The following shall be conclusively presumed to be solely and wholly dependent for support upon a deceased employee:

"(a) A wife upon a husband with whom she is living at the time of his death.

"(b) A husband upon a wife with whom he is living at the time of her death.

"(c) A child or children under the age of eighteen years (or over said age, but physically or mentally incapacitated from earning), upon the parent with whom he or they are living at the time of the death of such parent, there being no surviving dependent parent.    In case there is more than one child thus dependent, the death benefit shall be divided equally among them.

"In all other cases questions of entire or partial dependency shall be determined in accordance with the fact, as the fact may be at the time of the death of the employee; . . ."

The *Industrial Commission* in its opinion filed in the case with its findings defined the phrase "living together" thus:

"We are of the opinion that the husband and wife are to be considered as living together, even though one or the other may be absent from the home for a considerable length of time and separated by great distance; they are living together when they are not living apart, when there is neither legal nor actual separation of the bonds of matrimony."

We have been cited to no authority directly in point and have found none where the words "living together" have been construed in a statute similar to the one now before us. Authorities are cited by counsel where the words "living together" and similar phrases have been defined in standard dictionaries, and in statutes quite different from the one now before us. And it is argued by counsel for respondent that, giving the words the meaning ascribed to them according to the common and approved usage of the language, they import a dwelling together in the same place.

In giving construction to such statutes words are to be taken and construed in the sense in which they are understood in common language, taking into consideration the text and subject matter relative to which they are employed.

It has been ruled in England that terms used in the Workmen's Compensation Acts should be given their practical, popular meaning, and that a technical construction should not be placed upon them. *Smith v. Coles,* [1905] 2 K. B. 827; *Rogers v. Cardiff Corp.* 8 Workmen's Comp. Cases, 51; *Adams v. Shaddock,* [1905] 2 K. B. 859.

Proof of total dependency is dispensed with under the statute where the husband and wife are "living together" at the time of the death of the injured employee. It seems, there-

fore, quite obvious that the legislature intended by the use of the words to include all cases where there is no legal or actual severance of the marital relation, though there may be physical separation of the parties by time and distance. The "living together" contemplated by the statute, we think, was intended to cover cases where no break in the marriage relation existed, and therefore physical dwelling together is not necessary in order to bring the parties within the words "living together." There must be a legal separation or an actual separation in the nature of an estrangement, else there is a "living together" within the meaning of the statute. This seems to be the reasonable and practical construction of the law, and the one which we think the legislature intended.

If the law should receive the construction that there must be physical dwelling together in order to satisfy the statute, it is plain that the purpose of the law would in many cases be defeated, because in many cases the spouse may be absent from home for long intervals, although there be no break in the marriage relation, no estrangement, and no intent to separate or sever the existing relation or change the relations or obligations created by the marriage contract.

The circuit judge below conceded in his opinion in the record that temporary absence from home or from the place at which the other spouse resides would not warrant a finding that the wife was not living with the husband, if death occurred during such temporary absence, and that there is no fixed rule as to length of time that will take the case out of the statutory presumption of dependency. But he further held that the limit as to time had been exceeded in the instant case. In this conclusion we think the court below erred. There seems to be no solid reason why an absence of a month or a year or less should require a different construction of the words "living together" than an absence of three years and three months or more. The question does not turn on time or distance, but upon the nature and character of the absence

and the intention of the parties respecting it.   Intent is an important element in determining the nature of absence.   *Ex parte Gilmore,* 54 Eng. Com. Law, 967; *Williams v. Williams,* 122 Wis. 27, 99 N. W. 431; *Thompson v. Thompson,* 53 Wis. 153, 10 N. W. 166; *Miller v. Sovereign Camp W. O. W.* 140 Wis. 505, 122 N. W. 1126.

The status of the parties was established by their relation as husband and wife in their native country.   That relation having once existed is presumed to continue.   *State ex rel. Coffey v. Chittenden,* 112 Wis. 569, 88 N. W. 587.   It may well be that long-continued physical separation, unexplained, might raise an inference that the parties were not living together within the meaning of the statute under consideration, but the proof here is ample to rebut such inference.   The intent and purpose of the separation is explained, and the evidence shows that the marital relation continued without break.   Time and distance alone cannot sever such relation without intent or purpose to do so.

The findings of the *Industrial Commission* on questions of fact should not be disturbed if there is a substantial basis for the decision.   *State ex rel. N. C. Foster L. Co. v. Williams,* 123 Wis. 61, 100 N. W. 1048; *State ex rel. Milwaukee Med. College v. Chittenden,* 127 Wis. 468, 107 N. W. 500. But it is claimed by counsel for respondent that the finding to the effect that the deceased and his wife were "living together" is a conclusion of law and not a finding of fact, and that to hold otherwise would permit the *Industrial Commission,* a *quasi*-judicial body, to determine the legal significance of any and all parts of the law and conclude the parties from a judicial construction of the law by the courts.

Whether the parties were living together was a question of fact to be tried and determined by the *Commission.*   *Travelers Ins. Co. v. Hallauer,* 131 Wis. 371, 111 N. W. 527. What constitutes "living together," where the facts are un-

disputed and no conflicting inferences can be drawn from the evidence, is a question of law for the court.

In the instant case the *Commission* made its findings upon the facts leading up to the conclusion or ultimate fact which it stated, viz. that the parties were living together. The facts found formed the basis for the conclusion that the parties were living together, and the *Commission* had reasonable ground for the decision. *Clancy v. Board of F. & P. Comm'rs,* 150 Wis. 630, 138 N. W. 109.

"Findings of fact," as recognized by the decisions of this court, mean findings of ultimate rather than evidentiary facts. *Briere v. Taylor,* 126 Wis. 347, 105 N. W. 817; *Chippewa B. Co. v. Durand,* 122 Wis. 85, 99 N. W. 603; *McDougald v. New Richmond R. M. Co.* 125 Wis. 121, 103 N. W. 244; *Travelers Ins. Co. v. Hallauer,* 131 Wis. 371, 111 N. W. 527; *Cole v. Cole,* 27 Wis. 531.

It is only when the facts are undisputed and no conflicting inferences respecting the ultimate fact can be drawn therefrom that the question becomes one of law. *Ennis v. M. A. Hanna D. Co.* 148 Wis. 655, 134 N. W. 1051. The question of intent was an important factor in determining whether the parties were living together. This is ordinarily a question of fact. *Hoff v. Hackett,* 148 Wis. 32, 134 N. W. 132. We think the inference drawn by the *Commission* that *Jela Nevadjic* and her husband were living together at the time of his death is supported by the established facts.

*By the Court.*—The judgment is reversed, and the cause remanded to the circuit court with instructions to affirm the award of the *Industrial Commission.* No costs will be allowed in this court, except that respondent pay the clerk's fees.

BARNES, J. (*concurring*). The court has construed the statute in this case as meaning that, where husband and wife have been separated for a considerable length of time with-

out intention to sever their marital relations, they were living together. I agree with this construction of the statute. I do not agree that the question of whether or not they were living together is one of fact in this case. There is no dispute whatever in the evidence. Had the *Commission* and the circuit court decided under the established facts that the parties were not living together, this court would necessarily have to reverse their judgment because of the interpretation placed upon the statute. The only ultimate fact that could be involved in this case was whether an intention to sever the marriage relation could have been inferred from the evidence. That question being resolved in favor of the claimant, I think the question of whether they were in fact living together within the meaning of the statute was purely a question of law. This matter is not of any particular importance in the present case, but may be in future cases that are liable to arise under the Industrial Commission Act.