FINN *v.* DETROIT, MT. CLEMENS & MARINE CITY RAILWAY.

1. MASTER AND SERVANT—WORKMEN'S COMPENSATION—DEPENDENTS —HUSBAND AND WIFE.

> Act No. 10, Extra Session 1912, pt. 2, §§ 6, 7 (2 Comp. Laws 1915, §§ 5436, 5437), establishing a conclusive presumption of dependence if the wife is living with her husband at the time of his death, did not affect the right of a wife to recover compensation for the negligent death of her husband, with whom she had not been living for several months, or until she received word of the injury, when she went to the hospital and remained with him for a few hours before his death, under testimony showing that she had resumed the work at which she had been engaged before marriage, that no definite arrangements had been made for her return though she was willing to return and looked for a reconciliation, that the separation occurred because of differences in opinions, religious belief, etc., that she received letters from him every two or three weeks during her absence, in another State, but was not living with him in family relations and no plans had been made for resuming them.

2. SAME—CONCLUSIVENESS OF PRESUMPTION—EVIDENCE OF DEPENDENCY—SEPARATION.

> And while, upon the testimony as set forth in the record, the wife failed to establish facts that would raise such a conclusive presumption in her favor, where there was an actual separation or break in the marital relations, nevertheless the board should determine the extent to which she actually was, under the evidence, dependent, if dependence existed, and the cause is remanded for further proceedings to that end.

Certiorari to the Industrial Accident Board. Submitted October 27, 1915. (Docket No. 158.) Decided January 3, 1916.

Alma Maud Finn presented her claim for compensation against the Detroit, Mt. Clemens & Marine City Railway for the death of her husband in defendant's

employ.   From an order awarding compensation, respondent brings certiorari.   Reversed, and remanded for further hearing.

*Corliss, Leete & Moody* and *Benj. S. Pagel*, for appellant.

*Eldredge & Kelly*, for appellee.

STEERE, J.   This proceeding involves the review of a decision of the State Industrial Accident Board in affirming the conclusions of an arbitration committee awarding to complainant full compensation for the death of her husband under the provisions of Act No. 10, Extra Session 1912 (2 Comp. Laws 1915, § 5423 *et seq.*).

On May 9, 1914, William Finn, claimant's husband, while employed by respondent as an assistant engineer in its power house at New Baltimore, Mich., sustained fatal injuries by a boiler explosion, as a result of which he died two days later in a hospital at Mt. Clemens, Mich.   Claimant was not living with him at the time of the accident, but, having been summoned by an agent of respondent, was with him in the hospital for an hour or two on the evening prior to his death.

These parties were married on October 31, 1912, and thereafter lived together as husband and wife in a home provided by the husband at New Baltimore until October 5, 1913, when claimant left her husband's home and went to Ft. Wayne, Ind., where she was engaged in teaching school, having been absent from him about seven months.   She was there living and thus engaged when informed of her husband's injury.   After his death she returned and resumed her work as a teacher, being yet so engaged at the time of the arbitration in this case.

So far as the record before us discloses, neither the

committee of arbitration nor the Industrial Accident Board made any finding of facts in this case, except such as may be indirectly inferred from the formal award to claimant of $3,000 payable in weekly installments of $10 each, made by the committee and a short order by the board affirming the same, which are set out in the return to the writ of certiorari. The only testimony returned is that of claimant, certified as a "true transcript of so much of the testimony taken in the said cause before the original committee of arbitration, and presented to us upon the rehearing of the cause before this board as is deemed material to said cause, and as agreed upon by the attorneys for the claimant and respondent respectively."

The material provisions of our workmen's compensation law (said Act No. 10, pt. 2, §§ 6, 7; 2 Comp. Laws 1915, §§ 5436, 5437) are as follows:

"SEC. 6. The following persons shall be conclusively presumed to be wholly dependent for support upon a deceased employee: (a) A wife upon a husband with whom she lives at the time of his death; (b) A husband upon a wife with whom he lives at the time of her death; (c) A child or children, etc.   *   *   *   In all other cases questions of dependency, in whole or in part, shall be determined in accordance with the fact, as the fact may be at the time of the injury; and in such other cases, if there is more than one person wholly dependent, the death benefit shall be divided equally among them, and persons partly dependent, if any, shall receive no part thereof; if there is no one wholly dependent and more than one person partly dependent, the death benefit shall be divided among them according to the relative extent of their dependency. *   *   *

"SEC. 7. Questions as to who constitute dependents and the extent of their dependency shall be determined as of the date of the accident to the employee, and their right to any death benefit shall become fixed as of such time, irrespective of any subsequent change in conditions.   *   *   *"

To arrive at the award made by the committee and affirmed by the board, they apparently found that claimant was living with her husband at the time of his death, and they must therefore conclusively presume that she, as his wife, was wholly dependent upon him for support, regardless of what the actual facts were, and without regard to the later provisions of the act as to questions of dependency in whole or in part in other cases, or the requirement that the extent of dependency and right to death benefit shall be determined and fixed as of the date of the accident.

Whatever legal fiction may be invoked under a presumption as to claimant's residence by reason of coverture, it is undisputed that during more than half a year preceding her husband's injury and death she was living in another State, where she had resumed the manner of life and vocation followed by her before marrying, having of her own volition left him, abandoned the home in which they were living together, and withdrawn from all domestic duties and obligations of a wife under such circumstances as, from her standpoint, demanded a reconciliation with her husband before she would again live with him and resume marital relations. It is urged in her behalf that her evidence shows her absence from her husband was but temporary, with his consent, and not a final separation; that they were yet husband and wife, in friendly communication with each other, he contributing to her support, and, under a cited line of authority bearing on the temporary absence of husband and wife from each other for some good reason, she was living with him in contemplation of law at the time of his injury, and in fact at the time of his death. Her evidence as to the nature and occasion of leaving her husband and living apart discloses something more than a mere suspension of the family relations, for an understood period of time, incidental to journeys for business or

pleasure, changing the family place of residence, delays in preparing a new home, financial embarrassment, sickness, or like common causes which often result in the members of a family temporarily living apart without estrangement. While claimant testifies at length as to how she came to leave, what she thought, and how she felt about it, much of her evidence consists of conclusions and generalizations. She states they were of different religious faith, and had different ideas of different things; that there was no climax; that when she went she did not regard it as a final separation, and there was no agreement to that effect. She makes no claim that her husband wanted her to go or was unkind to her, but that matters were discussed and he "felt that, if I was not happy and wanted to go, why I could go, but that I should feel free to send to him for money at any time, and that he was always perfectly willing to give me whatever I wanted at all times"; that they made no definite arrangements for her to come back and live with him, but she "was perfectly willing to come, and willing for a reconciliation—in fact, had looked forward to it all the time, and felt it was bound to come." On whose initiative it was to come and just what was to be reconciled she does not state. Asked what were her intentions when she went away and her feelings towards her husband, she answered in part:

"My intentions were just. I really intended to go home, and I felt just going away and staying a while to see if the separation would not bring back a reconciliation. It was not a final move on my part. * * * I cared a great deal about him. I had no great ill feeling—no ill feeling toward him at all. It was just simply that there were a lot of little things came up, different things and different opinions, and so forth, that made us unhappy, and under the circumstances I thought that going away would bring us together."

The latter Hibernicism embodies the substance of

her repeated explanations of why she left and stayed away from her husband. In another portion of her testimony she says:

"I felt we were drifting apart, and the only thing that would bring us together would be a separation. So I went away."

In other words, she felt that:

"They would look better to each other when out of sight."

She further testifies that after leaving her husband they corresponded, and she received letters from him every two or three weeks, all of which she destroyed when changing her boarding place in April, because she did not care to take them with her; that he sent her money whenever she requested it, and since she left had sent her a total of $78.

From the time claimant left her husband's home in October, 1913, she did not see him again until the night of May 10, 1914, when she arrived at the hospital in Mt. Clemens about midnight and sat at his bedside an "hour or two," during which time she states that she—

"talked very little to him. Once in a while I spoke to him, and he knew me, recognized me, spoke my name, and once sang. I asked him not to sing, and he tried to rise, and he said: 'I always sang to you, and I think I can sing now.' "

After she had been with him the length of time stated, she went to another room at the suggestion of one of the sisters, and did not see him again before his death, which occurred the next morning at 8 or 9 o'clock. She testified that when she went in and spoke to him he first asked how she could leave her school; that, when she inquired if he missed her, and had been lonesome without her, he said he had been—

"so lonesome.  *  *  *  You won't leave me any more,

will you? You will stay right here with me always?"

It is urged that claimant's testimony sustains the statutory conclusive presumption of dependence in whole, because she is shown to have been living with her husband at the time of his death, it being said in her counsel's brief:

"If ever husband and wife were living together, these two were when they met, became reconciled, and spent their last few hours as husband and wife together."

While deceased's feeling and attitude as to a "reconciliation" may be inferred from his statement that he had been lonesome in her absence and his request that she "stay right here" with him "always," it does not even appear she gave him any assurance that she acquiesced, or that anything further passed between them concerning her return, beyond his inquiry as to how she could leave her school, to which she responded she had "managed that all right." Can it be said from her testimony, viewed most favorably to such contention, that, within the purpose and meaning of the statute, she was a wife living with her husband at the time of his death? She had just arrived from another State, where she was located and regularly employed as a teacher, coming, as she states, on receipt of "a telegram from the claim agent, Mr. Le Fevre, of the Detroit United Railway, stating that my husband was badly burned, and for me to come to Mt. Clemens, to St. Joseph Sanitarium." She was with him in his room, in the hospital to which others had taken him, for an hour or two after her arrival, and remained in the same building, but not with him, until his death on the following day. Leaving out of consideration the fact that they had been married and were not divorced, they were no more living in family relation, as such relation is commonly understood, than would have been any friend or relative who learned of his

injury and visited him at the hospital under like cir-
cumstances for the same length of time. After she first
withdrew from all conjugal relations, leaving her hus-
band and their home of her own accord, they had no
matrimonial abode, house, or home life together during
the remainder of his life, and, so far as shown, no defi-
nite agreement that they ever would have. Conceding
the claimed reconciliation, which was with her a condi-
tion of resuming the marital relations, they never did,
or could, re-establish a home and actually dwell to-
gether in fact.

The purpose and scope of this statute is compensa-
tion to dependents when death or injury befalls the
workman. It touches no other property rights arising
out of the domestic relations. Dependency in whole
or in part is primarily and as a rule a question of fact
to be determined as evidence may disclose, with the
exception of an absolute presumption of dependency
(irrespective of the facts) in case of husband and
wife or minor children under specified conditions. No
distinction is made between husband and wife in that
particular. If a wife living with her husband is
fatally injured in an employment coming under the
act, the husband living with her at the time of her
death is likewise conclusively presumed to be wholly
dependent for support upon her, irrespective of what
the real facts are. If the parties in this case were
reversed, and it was the husband demanding in his
favor conclusive presumption that he was wholly de-
pendent upon his wife because living with her at the
time of her death, he would be equally entitled to it
under the statute, but that he was living with her must
be established before the presumption can be invoked.
In this case the nature and character of claimant's
absence from her home and husband are undisputed,
and, whatever reason, preference, or pretext she may
have had for such course, it is manifest that she in-

tended to and did sever their personal marital relations for an indefinite period with the possibility and the expectation, as she represents, that at some indefinite time in the future, after a reconciliation, they would be resumed. In the most favorable view, as she states the case, the husband and wife were voluntarily living apart because they were not happy together, in different States, each following the pursuits and living the separate life led before marriage, but in friendly correspondence with each other and a possibility that the existing estrangement, whatever it was, might some time be reconciled and they live together again.

The Massachusetts workmen's compensation act (Stat. 1911, chap. 751, pt. 2, § 7) contains provisions identical with those under consideration here. In construing the expression "with whom she lives" the supreme court of that State, in *Re Nelson*, 217 Mass. 467 (105 N. E. 357), holds that those words are "used in antithesis to living apart," and mean—

"living together as husband and wife in the ordinary acceptation and significance of these words in common understanding. They mean maintaining a home and living together in the same household, or actually cohabiting under conditions which would be regarded as constituting a family relation. There may be temporary absences and incidental interruptions arising out of changes in the house or town of residence, or out of travel for business or pleasure. But there must be a home and a life in it. * * * But it is the situation arising from the existence of a common home, a place of marital association and mutual comfort, broken up or put in peril of hardship or extinction by the husband's death, which is protected by the conclusive presumption of dependency established beyond the peradventure of dispute by the statute."

No such state of facts is disclosed here.

In those cases where absence of the husband, by reason of employment or other common causes re-

garded as temporary, from an established home in which he resided with his wife or family has been held not to negative the statutory presumption, it is nevertheless recognized that the family relations in intent and fact must otherwise exist unbroken. Even in the extreme case of *Northwestern Iron Co.* v. *Industrial Commission*, 154 Wis. 97 (142 N. W. 271, Am. & Eng. Ann. Cas. 1915B, 877), cited and relied upon in claimant's brief—with which the *Nelson Case* does not harmonize in all particulars—the rule is guarded, and it is made plain that a wife may not be construed as living with an absent husband where there is an actual separation in the nature of an estrangement at the time of his injury and there exists at that time an actual severance or break in the marital relations. In this case it is the wife who had voluntarily absented herself from her home and husband under just the conditions last above recited, and therefore the conclusive presumption of total dependence does not obtain.

The foregoing conclusions do not deprive claimant of the right to show actual dependence, total or in part, as a matter of fact. While there is in this record no proof nor conclusive presumption shown to sustain an award on the theory that she was wholly dependent for support upon deceased, either at the time of his injury or of his death, the board can and should review whatever evidence is produced, ascertain from it, and determine as the facts appear, the extent of her dependence upon deceased for support at the time of his injury, as in such cases provided.

The decision of said Industrial Accident Board is therefore reversed, and the case hereby remanded for such further hearing therein before said board as parties may desire.

STONE, C. J., and KUHN, OSTRANDER, BIRD, MOORE, BROOKE, and PERSON, JJ., concurred.