KALCIC *v.* NEWPORT MINING CO.

1. MASTER AND SERVANT — WORKMEN'S COMPENSATION ACT — DEPENDENTS—PRESUMPTIONS.

A wife is not entitled to the conclusive presumption of dependency upon the theory that she lived with her husband at the time of his death, under the workmen's compensation act (Act No. 10, pt. 2, § 6, Extra Session 1912, 2 Comp. Laws 1915, § 5436), where she lived in a foreign country for seven years after her husband left to work in America, received less than $100 per year during such period from her husband, purchased a small tract of land and built a small house out of the money received from her husband and earned a very small amount of money each month by her own efforts.

2. SAME.

Evidence *held*, sufficient to sustain a finding that claimant was dependent as a fact upon her husband, although

she earned forty to sixty cents per month by her own labor.[1]

Certiorari to Industrial Accident Board. Submitted June 18, 1917. (Docket No. 70.) Decided July 26, 1917.

Antonija Kalcic presented her claim for compensation for the accidental death of her husband in defendant's employ. From an order awarding compensation, defendant brings certiorari. Affirmed.

*Flanders & Fawsett* (*Cummins & Nichols,* of counsel), for appellant.

*Thomas A. Lawler* and *John F. Berry,* for appellee.

Appellant respondent in this proceeding reviews by certiorari an order of the industrial accident board by the terms of which claimant was awarded the sum of $8.70 per week for a period of 300 weeks. Said order modified the award of the arbitration board which had allowed the claimant only the sum of $1 per week during a period of 300 weeks.

The facts which formed the basis of the action of the board may be briefly stated as follows: On January 13, 1907, one Louis Kalcic was married to claimant in Croatia, Austria-Hungary. On February 27, 1908, a child was born to this couple which died eight days later. On July 9, 1911, a second son was born, which still survives. Some time in the year 1907, Louis Kalcic left his home in Europe and came to the State of Michigan, and later secured employment with respondent as a miner. He paid one visit to his home in Croatia, apparently in the year 1910. He was the victim of an accident on the 21st day of May, 1914, which caused his death on May 22, 1914. His average weekly wage was $17.41. The testimony of

---

[1] On construction and effect of workmen's compensation acts, generally, see comprehensive note in L. R. A. 1916A, 23.

his widow, the claimant, was taken, and in substance was as follows:

"My name is Antonie Kalcic, 28 years old, Roman Catholic religion, widow of the laborer Ljudevit (Louis) Kalcic from Prkos, No. 57, community Kloster Ivanic. I was born in Prkos in 1887, where I have lived since my birth. My father's name is Vinko, and my mother's Marie. My occupation is day-laborer. I am a widow now. I was married to Ljudevit Kalcic, and I inclose my marriage certificate as exhibit. My husband's name was Ljudevit Kalcic. He was from Prkos. His parents' names were Ljudevit and Katherine Kalcic. I lived with my husband in Prkos in a home by ourselves. I lived with my husband one year. My husband left me in 1907. He left me and went to America because he could not earn anything here. He went to Painesdale, Mich. He worked in a mine. I received letters from him. I received the last letter from him at Easter time in 1914, written from Ironwood, Mich. I inclose this letter.

"I was informed of the death of my husband by his brother Mijo Kalcic, who worked in the same mine and he also related it to me when he returned home in June, 1914.' My husband died in Ironwood in a mine. He was struck by 20 cu. m. of iron falling on him, in consequence of which he died the next day.

"I have two children with my husband, Josip and Ivo, of which the former died. Both were born in Prkos, and I herewith submit their birth certificates. See exhibits 1, 2, 3, and 4. Josip died, but Ivo is still living. We lived in a rented house, and therefore my husband did not leave any estate here.

"Out of the money which my husband sent me from America I bought 1½ acres of land and built a small house on it. I received some letters from my husband, but I have only a letter and post card left, as the others have been destroyed. During the last year before his death I received about K400 (400 krone, about $80) from my husband through money orders. I received money from no one but my husband. During the absence of my husband I have earned K1 a day two or three times during a month. I had made up my mind to join my husband in America later. I could not do it until now, as I did not have the

means. My husband wrote me, and asked me to come to America as soon as he earns enough money for the journey. My husband never told me that he was coming back home. I do not receive any money for the support of my child from any one. I am supporting my child. I wish that the compensation be paid to me in a lump sum, and not in installments for the reason that a gigantic famine is prevailing and I could profit more with a lump sum than with monthly installments."

On March 6, 1914, a little more than two months prior to his death, Louis Kalcic wrote his wife a postal card as follows:

"*Dear wife:* You and our little son John please accept my best regards. I can inform you that I received your letter and understand everything you wrote. I am sending you 100 florins. Write if you have received the money. Also write me the news from home.

"Good-bye,

"KALCIC,

"Ironwood, Mich., 200 Boni Str."

—and on March 8, 1914, the following letter:

"IRONWOOD, MICH., March 8th.

"*Dear wife:* Accept, you and our little son Ivica, my best regards. I am glad to let you know I am alive and healthy and hope you are the same. Further I inform you that I received your letters and understand everything very well. You wrote that I had plenty of time during four months to think about writing. What shall I write to you? Everything I write to you is true, you must concern yourself with somethings, for if you at home don't want to care for anything, and if I here shall not care for anything, it would be a sad affair. You must know that what I earn, I could spend easily here, but I am always thinking of the future, and therefore have to be careful what I do. You know well that this is the seventh year I am in America, and we do not want to seem the poorest people in the village. I do not scold you as I have no reason to do so, but I am provoked

that I write and you do not answer. It might be that the letter you wrote was seized by somebody else. You should therefore not feel offended. Perhaps you have such a writer who does not know how to write.

"I greet our godfather and godmother, our family Milko and Ivica.

"Further I will let you know that a few days ago I wrote you a postal card. Write whether you received the same. I also sent you 100 florins. Kindly acknowledge whether you got it or not. Buy yourself clothes and buy the little one and yourself everything you need. Write whether you have sold the hay or not. Write how everything is. I would advise you to buy. If there is a chance to buy a barn for four or five hundred florins, I will send you the money immediately. Build a barn, so it will be ready by fall, and do not write such nasty letters any more. I remain with good-bye,

"Your husband,
"L. KALCIC,
"Ironwood, Mich., 200 Bonnie Str.

"Regards to you from Dragich and to Ivica. Please answer. My dear wife, that wood which we have at home you should not distribute among others, as you will need it if you build a barn, or, if you do not need it now, we can use it when I come home and build a house.

"Regards to you and to our little son Ivica. Write me the news immediately, also what you will do with the wood. Regards to father and mother. Drago send many regards to father and mother. He is still working and fond of saving. I would say much more if you would answer each one of my letters."

The record shows that during the absence of Louis Kalcic in America he sent to his wife in Austria various sums amounting in all to about $640, and that he sent her during the last year of his lifetime about $80.

BROOKE, J. (*after stating the facts*). The order of the board indicates that it was based upon the theory that claimant was wholly dependent upon her deceased husband at the time of the accident. It does

not indicate whether the conclusion was reached upon the ground that the wife was living with the husband at the time of the accident, within the meaning of the statute, and therefore conclusively presumed to be totally dependent, or that the total dependency appeared from the proofs in the case. It is the claim of the respondent that in either case there was no support for the conclusion of total dependency. Counsel cite *Finn* v. *Railway*, 190 Mich. 112 (155 N. W. 721, L. R. A. 1916C, 1142) ; *Ludwig* v. *Foundry Co.*, 194 Mich. 613 (161 N. W. 835) ; *Nelson's Case*, 217 Mass. 467 (105 N. E. 357). Counsel for claimant seek to distinguish the cases cited upon the facts, and cite in support of their position the case of *Northwestern Iron Co.* v. *Industrial Commission*, 154 Wis. 97 (142 N. W. 271, L. R. A. 1916A, 366).

We are quite convinced that under the circumstances of this case the claimant is not entitled to the benefit of the conclusive presumption of dependency upon the theory that she lived with her husband at the time of his death. Part 2, § 6, Act No. 10, Extra Session 1912 (2 Comp. Laws 1915, § 5436). After specifying in said section those who shall be conclusively presumed to be wholly dependent, the act provides:

"In all other cases questions of dependency, in whole or in part, shall be determined in accordance with the fact, as the fact may be at the time of the injury."

We are of opinion that the facts in this case differ very materially from those in the *Ludwig Case* relied upon by appellant. There we held there was no evidence of dependency in fact, because the decedent never supported his wife either in Austria-Hungary or in the United States. The contrary appears in the case at bar. Here the decedent during all the years of his absence from his wife and child contributed to

197—Mich.—24.

their support and in the last year of his life sent to his wife about $80. A fair consideration of her testimony indicates, we think, the fact that she was wholly dependent upon her husband. Her trifling earnings, amounting to about 20 cents a day, two or three times a month, should not be held to change her status in this regard. Upon this point see *Petrosino* v. *Arlington Mills*, 2 Mass. W. C. C. 804. No definite rule can be laid down for the determination of the question of dependency. Each case must stand upon its own facts. After a careful consideration of all the evidence offered in the case at bar, we have reached the conclusion that the board was warranted in finding as a fact that the claimant was totally dependent upon her husband at the time of his death.

The award is affirmed.

KUHN, C. J., and STONE, OSTRANDER, BIRD, MOORE, STEERE, and FELLOWS, JJ., concurred.