ELIZABETH J. HUGHSON, complainant-appellant,

*v.*

AMANDA M. HUGHSON, defendant-respondent.

[Submitted March 27th, 1916.   Decided June 19th, 1916.]

1. The statute (*Comp. Stat. p. 3169 § 16*), which limits a mortgagee's right of entry on the mortgaged premises to twenty years after the right has accrued, is not a bar unless the possession of the mortgagor and those claiming under him has been adverse and hostile to the mortgagee during the statutory period, and where the mortgagor or his grantees recognize the mortgage by paying interest or part of the mortgage debt, such act is plenary evidence that the possession is not adverse.

2. To bar such right of entry upon the ground of adverse possession, non-payment of any part of the mortgage debt within the statutory period is not alone conclusive of an adverse holding. It is persuasive, but not controlling, and may be repelled by proof that the possession of the mortgagor was permissive and not adverse.

3. If no payment be made by the obligor on the bond, which a mort-gage is given to secure, within the statutory limitation relating to such obligations, a payment by one not the obligor would not, at law, remove the bar of the statute as to the obligor, but a payment on the mortgage debt by a grantee of the obligor is a recognition of the mortgagee's right to enter on default, and rebuts any presumption that possession is hostile or adverse.

On appeal from a decree of the court of chancery.

*Mr. John H. Van Winkle* and *Mr. Winfield S. Angleman,* for the appellant.

*Messrs. King & Vogt,* for the respondent.

The opinion of the court was delivered by

BERGEN, J.

The complainant filed her bill to foreclose two mortgages, both given by Caleb Hughson to Stephen O. Horton, who be-

queathed them to his wife and she assigned them to the complainant September 8th, 1896. One of the mortgages bears date October 21st, 1873, and was given to secure the payment of $1,000, $500 of which matured April 1st, 1875, and $500 April 1st, 1876. This mortgage covered two tracts of land containing, respectively, sixty-one and seventy-six hundredths and seven and nine hundredths acres, and was given to secure the entire purchase price of the mortgaged premises conveyed by the mortgagee to the mortgagor.

The other mortgage bears date March 7th, 1876, payable April 1st, 1878, for $1,258.91, and embraced the same premises as well as the undivided one-third interest of the mortgagor in an adjoining tract of fifty acres of land which he held as a tenant in common with the complainant and their brother, the latter dying subsequently the complainant and her brother Caleb inherited the deceased brother's share, so, that at the death of Caleb, in 1908, the title to the tract of fifty acres was vested in him and the complainant in equal shares as tenants in common, and Caleb having in and by his last will and testament devised to his wife, the defendant, all his lands, she now holds the title to the two tracts described in the first mortgage, and also the equal undivided one-half part of the tract of fifty acres, the undivided one-third of which is included in the second mortgage.

The defence set up is, that as no entry was made on the lands by either of the mortgagees within twenty years next after such right accrued (*Comp. Stat. p. 3169*), the complainant is barred of any right of entry, and as an incident thereto of the right to foreclose defendant's equity of redemption, and, consequently, her bill disclosed no equity. The vice-chancellor, relying alone upon the fact that no payments had been made on account of either the principal or interest within the statutory period, decreed that the bill be dismissed, from which judicial action the complainant has appealed. The learned vice-chancellor apparently relied too implicitly upon some of the expressions of Mr. Justice Dixon contained in the opinion read by him for this court in *Blue* v. *Everett, 55 N. J. Eq. 329*, without applying the explanatory modification thereof as stated by Mr. Justice Depue in *Colton* v. *Depew, 60 N. J. Eq. 454*. In the latter case, the

learned justice, speaking for this court, conceding the evidential effect of the non-payment of any part of the mortgaged debt within twenty years, held that it was not conclusive, and that the mortgagor must go further and show that his possession during the statutory period had been adverse and hostile to that of the mortgagee. Mr. Justice Dixon, in *Blue* v. *Everett, supra,* said: "At law the bar of the statute could not be obviated by payments made on account of the debt, for the mortgagor does not hold the land under the mortgagee, and the payments could not be deemed rent, or in any sense the price of possession, but would be referred solely to the personal obligation held by the mortgagee." Referring to the foregoing quotation, Mr. Justice Depue, in *Colton* v. *Depew,* said: "This language does not accurately express the legal principle which controls when such a payment is made by the owner of the mortgaged premises in its effect upon the statute of limitations. The mortgagee has two securities for the debt, the bond and the legal estate in the mortgaged premises. A payment on the debt may be made by the obligor on the bond or by the grantee of the mortgaged premises. Where the obligor has conveyed the premises his grantee has no interest in keeping alive the contract to pay contained in the bond. A payment of interest or part principal on the debt may be made by the obligor or by his grantee. If such payment be made by the owner, who was not the obligor, it would not, at law, remove the bar of the statute of limitations in an action against the latter. The possession upon which the statute attaches must be adverse. The mortgagee is not barred by the possession of his mortgagor paying interest." In the same opinion the learned justice said: "It does not follow that because the complainant's right of possession accrued more than twenty years before suit brought, his right of action is gone, for to produce this result it is necessary to introduce a second factor, to wit, that there has been an adverse possession covering this statutory period. * * * A person may be in possession of property for a period longer than that mentioned in the statute, without paying rent or making any compensation for his occupation of the premises, and not be within the statute of limitations. Possession to make the statute available must be adverse

for the full period prescribed by the statute." From this the logical deduction is, that payment on account of the mortgaged debt by the mortgagor or his grantees would be plenary evidence that the holding by the mortgagor or his grantees was not adverse or hostile to the mortgagee, and that non-payment within the statutory period does not, standing alone, make the statutory bar conclusive, for there must be something in the case which shows that the holding was hostile and adverse. The absence of any payment during the statutory period would be very persuasive evidence of an adverse holding, but it may be overcome by facts and circumstances showing that the mortgagor or his grantees were not holding adversely against the right of entry of the mortgagee. We are of opinion that the facts in this case show that the owners of the mortgaged premises were not holding the possession thereof adversely to the rights of the mortgagee.

It appears that the wife of Stephen O. Horton was the half-sister of Caleb Hughson, the brother of the complainant; that the complainant had lived all her life in the house standing on the fifty-acre tract, and that she was over eighty years of age when this bill was filed; that her brother Caleb Hughson married the defendant in 1872, and brought her to live in the house with him and the complainant; that they have lived there ever since as one family, eating at the same table; that during the lifetime of Stephen O. Horton the land, or some part of it, was leased by Caleb Hughson to the Coplay Mining Company, the rent reserved being royalties, and that by an agreement between Hughson and Horton the royalties were paid to Horton, to be credited on account of the mortgaged debt; that according to the proofs, payments were made as late as January 12th, 1883, so that when the mortgages were assigned to the complainant, in 1896, the statutory period had not run. Since the time these mortgages were assigned to the complainant she has lived constantly on the farm, and, apparently, according to the proofs in this record, had an equal, if not a controlling, management thereof, at least since her brother's death.

Charles W. Tuttle testified that he had lived on the farm since 1878, working as a farmer, and on cross-examination testified as follows:

"*Q.* Where does Elizabeth J. Hughson live?
"*A.* Lives on the farm.
"*Q.* Is not she your employer?
"*A.* I work for her."

The defendant, who was about eighty-three years of age when called as a witness, testified as follows:

"*Q.* Now what intermissions have there been between the living together and the separation of you and Elizabeth J. Hughson?
"*A.* I have been away at various times.
"*Q.* For a long length of time?
"*A.* Two years at one time, and at another time one year; I can't just tell.
"*Q.* How long has she been away?
"*A.* She never has been away except for short visits to Plainfield and one visit up in New York state, I think.
"*Q.* Outside of the visits which she has made that has been her home since 1873, has it not?
"*A.* It has been her home since she was born."

This witness also testified that the mortgages had never been paid.

Since 1896, when this complainant became the owner of the mortgages, she has lived with her brother and his wife, the defendant, on this property, and the latter testified that between 1908 and 1914 she had spent at least three years away from the farm, during which period the complainant was apparently in sole possession of the property. We conclude from this testimony that neither the brother or his wife, the present defendant, were holding a possession adverse to the right of the complainant under her mortgages.

There is another reason why we think that the holding by the mortgagor was not adverse to the mortgagee. The testimony shows a very intimate relationship between the parties. It also shows that, although interest was often demanded by Mr. Horton during his lifetime, the mortgagor was too impecunious to pay any interest, and it is quite evident from this record that the forbearance was due to the relationship of the parties and the poverty of the mortgagor. When the defendant was asked why the interest was not paid, her reply was: "Well, he didn't have any way of making any money; the mines took all he had for

our living." Chancellor Vroom, in *Wanmaker* v. *Van Buskirk, 1 N. J. Eq. 685,* said that if no payment be made within twenty years, the presumption arose that the mortgage was paid, and that, standing alone without explanation, would prevail and be tantamount to absolute proof of payment. But he also held that such presumption might be repelled by circumstances. In the case he was considering, the mortgage was given by the husband of the mortgagee's daughter, and, concerning this, the learned chancellor said: "Upon this part of the case I entertain no doubt; the very situation of the parties is of itself sufficient to my mind. The mortgagor was a near relative, he had married the daughter of the mortgagee and had issue. According to Lord Erskin, in *Hillary* v. *Waller, 12 Ves. 265,* that alone was sufficient. The mortgagor died many years ago, leaving his wife and children in possession; they were not in a situation to pay either principal or interest. To have exacted the payment might have brought distress upon those who depended upon this property for support, and would have been harsh, to say the least of it. To suffer the mortgage to remain without compelling payment was a reasonable indulgence, and ought not to be set up now for the purpose of defeating the claim. One ground for the presumption of payment growing out of the lapse of time is, that a man is always ready to enjoy what is his own. Whatever will repel this will take away the presumption of payment, and for this purpose it has been held sufficient that the party was insolvent or a near relation."

The facts shown by this record are, that the complainant had lived on this farm ever since she was born, and apparently alone with her brother Caleb until he married the defendant. The relationship existing between Horton and his wife and Caleb Hughson, during his lifetime, was that of brother-in-law and sister, and that of the complainant, a sister of Caleb Hughson and sister-in-law of the defendant. The record shows that they lived together, getting from the farm a scanty living; that, although interest was demanded by Horton and his wife, the mortgagor was not able to pay, and it is quite evident, from the testimony in this case, that the indulgence of the complainant,

and of those who held the mortgage prior to its coming to her, was due to their relationship and the fact that the mortgagors were not able to pay the interest, and to turn them out would have been harsh and almost inhuman. The complainant is entitled to a decree for sale of the mortgaged premises to raise the amount which may be found due on her mortgages, and for that purpose the decree appealed from will be reversed and the record remanded to the court of chancery, to be there proceeded with in accordance with the views herein expressed.

The decree appealed from is reversed, with costs.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, WHITE, TERHUNE, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER—15.