WILLIAMS, Appellant, vs. WILLIAMS, Respondent.

*April 19—May 10, 1904.*

*Divorce: Voluntary separation: Evidence: Division of estate.*

1. In an action for divorce by a husband on the ground of desertion, the evidence is *held* to sustain a finding that the wife was entitled to a divorce upon her counterclaim, on the ground of voluntary separation for five years.

2. The fact that during the separation the wife wrote to the husband that she would never live with him again, did not change the voluntary character of the separation, in the absence of objection by the husband.
3. It appearing that the husband had property worth about $6,000, was forty-seven years old, in good health, and had an established business producing a fair income, while the wife was broken in health, unable to perform any hard labor, and had two minor children to support, an award to her of a gross sum of $1,800 was not unduly large, but it is *held* that it should be given to her, not as alimony, but as a final division of the husband's estate.

APPEAL from a judgment of the circuit court for St. Croix county: E. W. HELMS, Circuit Judge. *Modified and affirmed.*

This is an action for divorce brought by the husband on the ground of desertion. The defendant by her answer denied desertion, and counterclaimed for a divorce on the ground of voluntary separation for five years before the action.

The evidence upon the trial showed that the parties were married March 15, 1877, in this state, and lived upon a farm near New Richmond, St. Croix county, until the year 1891, when, being in poor health, the defendant, with her husband's consent, went to the state of Oregon with the five children of the marriage, it being then expected that the plaintiff would sell the farm and go to Oregon to live, or that the defendant would return to the plaintiff in Wisconsin after a time; that considerable correspondence passed between the parties up to the spring of 1896, and that the plaintiff from time to time sent the defendant small sums of money, but not enough to support her and the family, and that the defendant has earned the major part of her own living, with the help of her children; that up to March, 1896, it was expected that the plaintiff would send to the defendant money to bring herself and children back to Wisconsin; that in various letters prior to March 21, 1896, the plaintiff made this promise,

and upon the last-named date sent a letter of a harsh and un-kind nature, but still making a partial promise to send the money in May.   He did not send the money, and the defend-ant testifies that he then ceased·to write letters, and that she received no further letters from him until June, 1901, when he sent a note inclosing a deed of the farm, to be signed by her.   It appears further that the defendant wrote a letter September 8, 1897, and sent it to the plaintiff, stating that they could no longer live together, and demanded some of the property.   This action was commenced about February 1, 1902, and at the time of the entry of judgment three of the five children were adults, and two were minors, sixteen and ten years of age, respectively.

The court found that the parties had·lived voluntarily separate five years before the commencement of the action, and that hence the defendant was entitled to the divorce; that the plaintiff owned a farm of 160 acres in St. Croix county, and a small tract of land near the city of New Rich-mond, altogether being worth $8,000, and personal property, consisting of stock and machinery upon the farm, worth $1,000, all of which had been accumulated since the defend-ant went to Oregon; that he owed debts not exceeding $3,100, and that the plaintiff had contributed to the support of the defendant and his family while in Oregon not exceeding the sum of $400; that the plaintiff is forty-seven years of age and in good health, and is a successful farmer, owning a milk route in the city of New Richmond which produces a fair in-come; that the defendant is forty-five years of age, broken in health, and unable to perform hard labor; that the defendant was not guilty of any serious delinquencies in the marriage relation; that the children had all lived with the defendant since she went to Oregon, and had been supported by her and by the earnings of the elder children.

Upon these facts, the court found that the defendant was entitled to a divorce from the bonds of matrimony, and en-

titled to the custody of the two minor children, and that she should have alimony out of the plaintiff's estate amounting to $1,800; giving the plaintiff an option to execute and deliver to the defendant a note and mortgage upon his real estate for said sum of $1,800, payable at the rate of $200 per year, at five per cent. interest. This option not being accepted, judgment was entered granting the defendant a divorce and the sum of $1,800 as alimony, and the plaintiff appeals.

For the appellant there was a brief by *W. F. McNally* and *A. J. Kinney,* and oral argument by *Mr. Kinney.*

For the respondent there was a brief by *Baker & Haven,* and oral argument by *Spencer Haven.*

WINSLOW, J. The circuit judge, in his findings, said that it was a very close question whether the plaintiff was entitled to a divorce on the ground of desertion, or whether the defendant was entitled to a divorce on the ground that the parties had voluntarily lived apart for five years, but finally concluded that the evidence justified the latter finding. This conclusion is challenged by the plaintiff as unsupported by the evidence. Even were we satisfied that the circuit judge was wrong in his conclusion, and should have given the plaintiff a divorce on the ground of desertion, we are not at all sure that it would make any difference with the share of the property which should be adjudged to the wife, because the desertion proven, if any, was evidently the result of the failure of the plaintiff to support his family for many years, crowned by the failure to send them the means to return home, and the deliberate discontinuance of all correspondence with the defendant. Irrespective of this question, however, we are inclined to the opinion that the finding is sufficiently supported by the evidence.

The provision of our statute authorizing a divorce *a vinculo* when the husband and wife have voluntarily lived entirely

separate for the space of five years immediately preceding the commencement of the action (subd. 7, sec. 2356, Stats. 1898) is peculiar to Wisconsin. Kentucky has a statute authorizing such a divorce when the parties have lived apart without cohabitation for five years (Ky. Stats. 1894, sec. 2117), and Rhode Island a statute authorizing divorce when the parties have lived separate and apart from each other for the space of at least ten years (Gen. Laws R. I. 1896, ch. 195, sec. 3), but we have found no other states with similar provisions. Authorities bearing on the construction of this statute are therefore necessarily confined to our own state, and there is perhaps little need for authority, in view of the simplicity of the statute. As said in *Thompson v. Thompson,* 53 Wis. 153, 10 N. W. 166, there are but two requirements: first, that the parties should live entirely separate for five years; second, that such separation should be mutually voluntary. In *Phillips v. Phillips,* 22 Wis. 256, it was held that the voluntary character of the separation might be sufficiently proven by acts, and that proofs of specific declarations of such a purpose were not necessary, and this ruling was substantially followed in *Cole v. Cole,* 27 Wis. 531.

In the present case the testimony of defendant is definite and clear that after the plaintiff's letter of March 21, 1896, she decided that she did not wish to return to the plaintiff or live with him. While the plaintiff claims that he still expected to resume the marital relation, there is much evidence to the contrary. The letter of March 21st aforesaid was bitter and harsh. According to the defendant's evidence, it was the last letter which he wrote, until a brief note in June, 1901, asking her to sign a deed. This sudden and complete stoppage of a correspondence which had been active and friendly before that time, coupled with the fact that the plaintiff sent no money thereafter either to defray the expenses of travel or to support the family, and offers no rea-

sonable explanation of this complete change of attitude, certainly justifies the inference that he had reached the conclusion that it was desirable to live separate. If he did reach that conclusion at or about the time of the sending of the last-named letter, then the required five years of voluntary separation was proven, this action not having been commenced until about February 1, 1902. Nor can it make any difference with the result that the defendant, at some time after the voluntary separation had begun, wrote to the plaintiff, stating that she would never live with him again. This would not change the voluntary character of the separation, in the absence of objection on the part of the plaintiff. If, when she made this statement, the plaintiff had notified her that he objected to further separation and was ready to provide the means for her to return to him, this action would doubtless have put an end to any further claim of voluntary separation, but he did no such thing. He simply kept silent, and thus the mutually voluntary character of the separation remained as before. We conclude, therefore, that the findings of the trial court are sufficiently sustained by the evidence.

Complaint is made that the provisions for alimony are excessive. We do not think so. The husband's real estate was found, upon sufficient evidence, to be of the value of $8,000, his personal property of the value of $1,000, and his *bona fide* debts not to exceed $3,100. Thus he was found to be worth substantially $6,000. In addition, he was found to be physically sound, in the prime of life, a successful farmer, with a milk route in the city of New Richmond producing a fair income. On the other hand, the defendant is broken in health, unable to perform any hard labor, and has two minor children to support. Under such circumstances, a gross sum of $1,800 is not an unduly large sum to be awarded to the wife. We think, however, that, instead of being allowed as alimony, this sum should be awarded as a

final division and distribution of the estate of the husband. between the parties. This course is nearly always prefer-able, as it closes the door to future litigation and difficulty between the parties. We have concluded, therefore, to mod-ify the judgment by striking therefrom the words "that the defendant have and recover as and for alimony from the plaintiff," and by inserting instead the words "that the de-fendant have and recover from the plaintiff as and for a final divison and distribution of the estate of the plaintiff," and to affirm the judgment as so modified.

*By the Court.*—Judgment modified as indicated in the opinion, and affirmed as modified, with costs to be taxed in favor of the respondent.