## WILLIAM C. DEAN v. G. GUY SLACUM.

*Title of Statute — Sufficiency — Construction of Fish Weirs —
Equal Protection of Laws.*

The title of Acts 1924, ch. 495, giving to riparian owners on
Fishing Bay a prior privilege of constructing weirs in front of
their lands, is sufficient, it describing the act as adding a new
section to article 10 of the Code of Public Laws, title "Dorches-
ter County," said section to be known as section 155CC, and
to be under sub-title "Fish," the Code of Public Local Laws be-
ing evidently meant.                                    p. 580

A description of an act by a Code article and section desig-
nation sufficiently complies with the constitutional requirement.
                                                       p. 580

Acts 1924, ch. 495, giving to riparian owners on Fishing Bay
the prior right to construct fish weirs in front of their land,
does not deprive any citizens of the equal protection of the laws.
                                                    pp. 581, 582

*Decided January 14th, 1926.*

. Appeal from the Circuit Court of Dorchester County, In
Equity. (BAILEY, J.).

Bill by G. Guy Slacum against William C. Dean. From
an order overruling a demurrer to the bill, defendant appeals.
Affirmed.

The cause was argued before BOND, C. J., PATTISON,
URNER, ADKINS, OFFUTT, PARKE, and WALSH, JJ.

*J. Purdon Wright,* with whom was *V. Calvin Trice* on
the brief, for the appellant.

*Herbert Levy,* with whom were *Emerson C. Harrington,
Thomas H. Robinson* and *Harrington & Harrington* on the
brief, for the appellee.

URNER, J., delivered the opinion of the Court.

The General Assembly, by chapter 495 of the Acts of 1924, added section 185CC to article 10 of the Code of Public Local Laws, title "Dorchester County," providing as follows: "Any owner of riparian rights on any waters in Fishing Bay in Dorchester County, lying north of a line drawn from Roasting Ear Point to Fishing Point, shall by virtue of such ownership be first entitled to make a choice of the set or position in front of the property of which he or she is the owner of the riparian rights therein, for fish net or nets he or she may desire to there set or place, provided that if said owners of said riparian rights do not avail themselves of the privilege of locating the position or positions where they desire to place or set nets or weirs each year within twenty days after receiving notice from any other person or persons who may desire to locate their nets or weirs in front of said riparian owner's property, then it shall be lawful for said person to locate or place their nets or weirs in front of said property."

Section 185C, as amended by chapter 316 of the Acts of 1914, provides, in part, that it shall be "unlawful in the waters of Fishing Bay, south of a line drawn from Black Water Point to Irish Creek, and north of a line drawn from Roasting Ear Point to Duck Island Point, to set any weir more than four hundred yards from shore, or to set any line of gill nets or weirs closer to each other than four hundred yards * * *."

The appellee is the owner of a tract of land fronting on Fishing Bay within the limits defined by the statutes from which we have quoted. With a view to the exercise of his riparian rights under Section 185CC, he prepared for the erection of several weirs in the bay along the shore line of his property, and had purchased a large quantity of materials to be used for that purpose, when the appellant, without giving the notice required by the law, constructed a weir, and was proceeding to erect another, in Fishing Bay, opposite the appellee's land and within four hundred yards of

the shore. In this suit for a mandatory injunction to compel
the removal of the appellant's weirs, the question, raised
by the demurrer to the bill of complaint, is whether the
statute conferring the riparian fishing right asserted in the
bill is constitutional. The appeal is from an order over-
ruling the demurrer.

The first contention is that the title of the act does not
conform to the provision of section 29 of article 3 of the
State Constitution, that "every law enacted by the General
Assembly shall embrace but one subject and that shall be
described in its title." The statute is entitled as follows:
"An Act to add a new section to article 10 of the Code of
Public Laws of Maryland, title 'Dorchester County,' said
section to be known as section 185CC, to follow immediately
after section 185C of said article, and to be under sub-title
'Fish.'" There is no difficulty in holding this title to be
sufficient. It has been repeatedly decided that a correct title
description of an act by Code article and section designations
is a compliance with the constitutional requirement. *Todd
v. Frostburg,* 141 Md. 693; *Key v. Key,* 134 Md. 418; *Rug-
gles v. State,* 120 Md. 564; *Worcester County v. School Com-
missioners,* 113 Md. 307; *Kingan Packing Asso. v. Lloyd,*
110 Md. 619; *Anne Arundel County v. United Railway Co.,*
109 Md. 377; *Barron v. Smith,* 108 Md. 317; *Himmel v.
Eichengreen,* 107 Md. 610; *Garrison r. Hill,* 81 Md. 551;
*Lankford v. Somerset County,* 73 Md. 118; *German Build-
ing Assoc. v. Newman,* 50 Md. 62. The title here in ques-
tion describes the act as incorporating a new section, with a
specified number, in the Code article relating to Dorchester
County, and under a sub-title indicating accurately the gen-
eral subject of the legislation. It was not necessary that
the title should be more explicit in its description of the
statute. The omission of the word "Local" from the refer-
ence to the Code in the title could not have caused any doubt
that the Code of Public Local Laws was meant, in view of
the other descriptive terms employed.

It is further contended that the act violates the constitu-

tional right of citizens to the equal protection of the laws.
There is said to be an invalid discrimination against the
general public, and in favor of riparian land owners, with
respect to the privilege of constructing weirs in the waters
of Fishing Bay. The pre-emption by any one of a part of
the bay for that purpose excludes others from the exercise
of a similar privilege at the same point during the period
of the occupation, but the opportunity of every citizen to
acquire or enjoy such an individual advantage is said to be
protected by the Federal and State Constitutions from any
legislative interference which is designed to benefit a par-
ticular class of citizens. This theory, if sound, would be
equally available against a number of existing laws giving
priority of tide-water fishing rights to riparian proprietors,
the following statutes having such effects are cited in the
appellee's brief: Acts of 1922, ch. 207; 1920, ch. 361; 1910,
ch. 141; 1906, ch. 527; 1890, ch. 89; 1874, ch. 219; 1872,
ch. 292; Code, art. 39, secs. 68, 70. But in our opinion the
statute now under consideration is free of constitutional objec-
tion. It was passed in the exercise of the State's power to
regulate and control its fisheries, consistently with the right
of navigation. *McCready v. Virginia,* 94 U. S. 391; *Smith
v. State,* 18 Howard, 75; *Hughes v. State,* 87 Md. 298. The
Legislature could prohibit altogether the use of fish nets
or weirs in Maryland waters. *State v. Applegarth,* 81 Md.
293. It can prescribe the conditions under which such fish-
ing methods may be used. The privilege can be validly re-
stricted to the citizens of a county with respect to the waters
within its boundaries. *Cox v. Revelle,* 125 Md. 587. It was
held in *Phipps v. State,* 22 Md. 380, that a statute was valid
which authorized, upon certain conditions, "any citizen of
any county bordering on the waters of the State, to locate
and appropriate within the waters thereof any area not
exceeding one acre, for the purpose of depositing and bedding
oysters * * *." The constitutionality of the statute was chal-
lenged, as stated in the opinion, "on the ground that it con-
fers special and exclusive privileges inconsistent with, and

in derogation of the common right of free fishery in the
waters of the State." But the Court said: "The power of
the Legislature to authorize the erection of wharves and the
reclamation of land from the water, for the purpose of
encouraging navigation and commerce, has never been ques-
tioned, notwithstanding the effect has been to confer priv-
ileges and advantages wholly private and exclusive in their
character. And there appears to be no substantial reason
why it may not, in like manner, grant privileges, affording
particular and exclusive benefits, for the purpose of increasing
generally the product and value of the common right of
fishery."

A different principle is sought to be applied to this case
on the theory that the priority of weir privilege given by
the statute to the riparian owners is not conducive to the
preservation of the fisheries for the public benefit. It may,
however, be the policy of the statute, by stimulating activity
on the part of the owners of riparian lands in the use of
the adjacent bay fisheries, to increase their product for public
consumption. But the immediate and evident purpose of the
act is to regulate the location of stationary nets and weirs
in the waters of the bay. As the employment of such fishery
methods by the public is permitted, and involves the exclu-
sive use, for considerable periods, of particular water areas,
it was competent for the Legislature to regulate such appro-
priations of portions of the State's domain. No one is pro-
hibited by the statute from placing weirs in the bay, but with
respect to the question of priority among competitors for
the same locations, the provision that one owning the neigh-
boring shore should have preference does not seem unreason-
able. In giving to riparian owners the initial option to
select and occupy weir locations in front of their properties,
the act preserves equality among the members of that class of
land owners, and makes no arbitrary discrimination against
other citizens. It leaves to the general public the unre-
stricted privilege of fishing in the waters of the bay except
by the use of weirs within four hundred yards of the shore

and at points occupied by the weirs of the riparian land owners. In our opinion the act does not disregard any constitutional limitation in conferring upon such owners the priority of privilege which it defines, and we agree with the lower court in its conclusion that the statute is valid.

*Order affirmed, with costs, and case remanded.*