## ANNA SERIO *v.* ANTHONY SERIO
[No. 2, April Term, 1936.]

*Decided June 10th, 1936.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, MITCHELL, SHEHAN, and JOHNSON, JJ.

*R. C. Cole* and *Stewart Lee Smith,* for the appellant.

*George B. Woelfel,* for the appellee.

SHEHAN, J., delivered the opinion of the Court.

Anthony Serio, the appellee in this case, filed a bill of complaint in the Circuit Court for Anne Arundel County against Anna Serio, appellant, praying for a divorce *a vinculo matrimonii,* and for the custody of their children, Angelia, fifteen years, and Raymond, thirteen years of age, respectively.

During a long married life, these parties seem to have gotten along with a moderate degree of satisfaction and with success, until Anthony Serio paid a visit to his native land in 1928, where he stayed for two months. There is evidence that immediately after his return his conduct towards his wife became harsh and brutal.

In her answer she charges that, because of these cruelties and brutal treatment, she was compelled to leave their home and live apart from him; that his conduct was such as to make it impossible for her to live with him in safety to her health, and with self-respect, and the separation was caused by his wrong doing and not because of any fault of hers; and that he is not entitled to the relief prayed.

In February, 1933, Anna Serio filed a bill of complaint against her husband in the Circuit Court for Anne Arundel County, praying for a divorce *a mensa et thoro* and alimony, and alleging cruelty as grounds for such divorce. There was a decree passed in favor of Anthony Serio and her bill was dismissed. The decree was filed August

13th, 1934. Eight days thereafter Anna Serio filed another bill of complaint in the Circuit Court No. 2 of Baltimore City, seeking a divorce *a vinculo matrimonii* on the grounds of desertion. The bill also contained an allegation of adultery. On February 20th the bill of complaint in that case was dismissed.

On August 22nd, 1934, Anthony Serio filed a bill for divorce *a vinculo matrimonii* against his wife, alleging desertion for the statutory period of three years. Testimony was taken, and on October 4th, 1935, a decree was passed granting a divorce *a vinculo matrimonii* to Anthony Serio. From this decree this appeal was taken. The custody of the two minor children was awarded to their mother by Circuit Court No. 2 of Baltimore City. The custody was not disturbed in the decree in the instant case.

There are several preliminary questions that should first be disposed of. A petition was filed by the appellee asking leave to take testimony, and an order was passed authorizing this to be done before one of the standing examiners. The usual notice of the order was given to the appellant, who appeared and cross-examined the appellee's witnesses, but later sought to obtain an order for taking testimony in open court. Just before the taking of testimony, the attorney for the appellant requested the appellee to defer the taking of testimony in order that a petition might be presented by him asking that the testimony be taken in open court. This the appellee declined to do. The appellant had ample time in which to procure an order, had she acted promptly. The failure to do so was entirely the fault of the appellant, and under these conditions there was no reversible error in the action of the chancellor in his refusal to pass an order to take the testimony in open court, and in dismissing the petition filed for that purpose.

Another question is that of the right of the appellant to be awarded alimony *pendente lite,* counsel fees, and costs. In this state it has been so often held that the wife is a favored suitor, and that she is entitled to be placed in

relatively the same position in regard to the prosecution of her suit as her husband occupies with respect to his, that this requires no discussion. It is not disputed that she was without means. The evidence is that she was "on relief." The chancellor, in denying alimony, reasonable counsel fees, and expenses incident to the prosecution of her case, including this appeal, committed reversible error. *Daiger v. Daiger,* 154 Md. 501, 140 A. 717; *Buckner v. Buckner,* 118 Md. 101, 84 A. 156; *Hood v. Hood,* 138 Md. 355, 113 A. 895; *Sterling v. Sterling,* 145 Md. 631, 125 A. 809; *Silverberg v. Silverberg,* 151 Md. 152, 134 A. 32; *Hilbert v. Hilbert,* 168 Md. 364, 177 A. 914; *Porter v. Porter,* 168 Md. 296, 177 A. 464.

The principal question for our determination will now be considered. In this, as in all like cases, there are irreconcilable contradictions. This seems to be a vice pervading testimony in most cases of this character. These cases present almost entirely fact finding problems, and no one of them is free from difficulty, because of the character of the testimony and the consequences to be expected from the separation of the parties, and the attendant hardship imposed upon the children, who should be the objects of first consideration and solicitude of the court.

For a long time these parties lived together and worked together in reasonable cooperation and harmony, and, viewed from their social and economic station, were fairly successful. When the husband went abroad he left the business in charge of his wife, and there is no question that she conducted it in a careful and prudent manner. At all times prior to the separation she looked after the children, cared for their needs, and assisted in the business and cooperated generally with him. She received a fair degree of consideration from her husband before he made his trip to Italy. Immediately after his return the trouble began. The testimony shows that he abused and cursed her, using the vilest epithets, said he wanted her no longer, ordered her to leave, seized her by the neck, and pushed her out the door. On numerous occasions

he struck her, and once struck her in the face, breaking her nose. For this he was arrested and a fine was imposed upon him. It is claimed that his conduct became so violent and disgusting that she was compelled to leave the house they had occupied, and to go into a room over the store or shop next door, which they also conducted, and there take up her living quarters. The appellant charges this to have been entirely the fault of the appellee.

Assuming this to be true, there can be no doubt of the rights of the appellant. The law is too well settled to be controverted. In the case of *Schilling v. Schilling*, 167 Md. 151, 173 A. 10, Judge Digges stated: "The law on this question is thoroughly well established." When the wrongful conduct is of a character as is recognized by law as amounting to a justification on the part of the wife in leaving her husband, he is then the one guilty of abandonment and desertion in contemplation of the law. *Hoffhines v. Hoffhines*, 146 Md. 350, 126 A. 112; *Taylor v. Taylor*, 108 Md. 129, 69 A. 632.

The testimony in this cause was taken before an examiner in equity, and there are no questions on the admissibility of evidence properly presented by the record. It is true that counsel for the husband filed exceptions to certain testimony, but these exceptions are too indefinite in form or as to evidence which was not objected to when offered, and so cannot be considered. The taking of the testimony was loosely conducted, and the parties submitted the cause to the chancellor on the testimony which had been returned by the examiner, and on this evidence the cause was heard and determined, and from this evidence the court must reach its conclusion.

The testimony offered is so confused and indefinite as to make it difficult of statement. No useful purpose will be served by its repetition. It has been carefully weighed and considered in the light of the rule that the burden of proof was upon the husband to establish his case, with corroboration of his own testimony. Our considered opinion is that he has not done this, and that the proof

is that the husband is not entitled to a divorce, as he seems to have been equally at fault with his wife in the marital difficulties which have disrupted their relations.

The most casual examination will show that the testimony upon the part of the appellee, including his own, is unsatisfactory and inconclusive. The testimony of his witnesses was equally lacking in weight. The near neighbor Max Goldsmith stated that he knew nothing about the case. The servant Elizabeth Green knew very little about the situation, and, holding the position as servant, her testimony must be viewed with suspicion or taken with hesitation.

The policeman was rather indefinite and apparently had some prejudices. The two sons called as witnesses spoke in the highest terms of the appellant as a mother, and knew very little, if anything, about the cause of separation; but stated they did not know of any reason for her going.

A brief reference to the testimony of the appellee upon the main issue in this case will show its inconclusiveness. Mr. Serio testified: "Q. State when and where you were separated? A. 1929 at Glenburnie, Md. Q. What was the cause of separation? A. She left me because we could not agree. Q. Has she lived with you since that time? A. No sir. Q. Have you had intercourse with her since 1931? A. Not as I remember. Q. What was your conduct towards your wife? How did you treat your wife? A. All right." And on his cross-examination he testified with regard to the separation: "Did you ever separate from Mrs. Serio prior to 1928? A. No sir. Q. Did she ever separate from you? A. Some nights she use to go sleep in the empty house. Q. Did she ever go off and get another home? A. No. Q. So you lived together as husband and wife for nineteen years? A. Yes. Q. She bore the children, took care of the home and reared them? A. Yes. Q. Up until you went back to Italy? Up to that time things got along pretty well at home? A. Yes. Q. What happened after you came back from Italy? A. Just, I could not tell you. She got fits. She use to

often get fits all time. Q. Were the fits any more pronounced after you came back from Italy? A. Use to get fits. Q. Use to get fits and leave you at night and go sleep in an empty house, is that a fit? A. I don't know what you call that,—for nothing. Q. There was no separation between you and Mrs. Serio until sometime the latter part of 1928, is that right? A. Yes."

This was substantially Mr. Serio's testimony in regard to the separation. It cannot be held to be descriptive of or enlightening as to details of the situation at the time of or immediately preceding the alleged desertion, but is conclusive that there was no separation prior to his going to Italy and no serious trouble. The house to which at times she went to sleep was over a store in which a gift shop was conducted by them, and adjoined their usual place of abode. It can scarcely be contended, with no more details than are found in the record, that her conduct then constituted a desertion. She was still helping to conduct the business and looking after her children. It may be gathered with a degree of certainty that something happened while he was abroad that alienated him from his wife whom he had left at home to conduct the business, look after the children, and manage affairs generally, which she evidently did with fidelity, awaiting his return and the resumption of their marital relations. There is nothing in the testimony to show what, if anything, happened to cause his estrangement while he was abroad, but immediately upon his return his conduct was altered and his mistreatment of his wife began. Except as to the general statement that he treated his wife "all right," there is no evidence contradicting her specific testimony as to his acts of cruelty.

That there had been a separation there can be no doubt, but it is apparent that the cause for this separation arose after the appellee had returned from his visit to Italy. Until that time the testimony shows that they had gotten along with a reasonable degree of harmony and cooperation. On cross-exaxmination the appellee testified that: "Q. Up until you went back to Italy? To

that time things got along pretty well at home? A. Yes."
But he stated that after he came back his wife "use to
get some fits." "I don't know what you call that,—for
nothing." That there was no separation until the latter
part of 1928, which was after he returned. He stated that
there was no definite separation and seemed quite unable
to answer the question as to why his wife left him after
living together nineteen years. The charge as to his un-
natural and harmful misconduct in their sexual relations,
made directly and positively by her, he did not deny in
his testimony, nor did he in his rebuttal testimony deny
that he had struck her, had broken her nose, had been
arrested, and that a fine had been imposed upon him.
It is very true, however, that some latitude must be given
to him in analyzing his testimony. He seems to have a
certain amount of intelligence, but, on the other hand,
the English language is apparently something of a prob-
lem to him.

Mrs. Serio, Mr. Serio, and the children all testified that
until this trip abroad the situation in the home was
reasonably harmonious. There was some contention,
and, it may be, some quarreling, but nothing of a serious
character, and it was only after his return that the real
troubles began, which were of the character already
referred to.

We do not believe that the appellee has sustained his
allegations, either by the character of the testimony or
by a preponderance thereof, and further we believe it
possible for these people, who have so much in common
and have lived together for such a long number of years
and are now past middle age, to find some way to recon-
cile their differences and to resume their former relations.
Corroboration on the part of either has not much force,
although it does exist. Mrs. Serio's physical condition,
as testified to by Dr. Gray, the condition of her face as
a result of the alleged blow, the admitted fact that the
situation in the home was satisfactory before the appellee
went abroad, and other facts in the case, possess some
corroboration of the alleged brutality of her husband,

and for the reasons above given this case should be reversed and remanded for a decree in conformity with the views herein expressed.

*Decree reversed; case remanded for the passage of a decree in conformity with the views herein expressed. Costs to be paid by the appellee.*