CHARLES E. TOOMEY *v.* FRANK E. SHIPLEY,
County Treasurer

[No. 23, April Term, 1937.]

*Decided May 24th, 1937.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Edward A. O'Brien,* for the appellant.

*Jerome A. Loughran* and *Chester F. Morrow,* with whom were *H. Warren Buckler, Jr.,* and *Niles, Barton, Morrow & Yost,* on the brief, for the appellee.

URNER, J., delivered the opinion of the Court.

The decree under review on this appeal dismissed a bill of complaint which prayed for an injunction to prevent the treasurer of Howard County from collecting water taxes, amounting to $108.91, imposed upon the plaintiff as the owner of property in a special water supply area. The taxes were levied in pursuance of section 5 of chapter 394 of the Acts of 1931, as amended by

chapter 506 of the Acts of 1933, as amended by chapter 3 of the Acts of 1935 of the General Assembly of Maryland. As finally amended, section 5 included the following provision:

"For the purpose of paying the interest and providing for the retirement of the bonds as herein provided and the annual rental for fire hydrants for the water supply to be established in the special taxing district of the First Election District, the county commissioners of Howard County are hereby authorized and directed to levy an annual front foot tax, not exceeding twenty (20c) cents per front foot * * * upon all the property in said special taxing district, improved and unimproved, abutting or binding upon a street, road, lane, alley or right of way in which a water main has been laid. In addition to this front foot tax the said county commissioners shall levy an annual tax upon all the taxable property in said special taxing district which shall be sufficient, together with the receipts from the front foot tax, to pay the interest on said bonds and to redeem the said bonds as they mature. Provided, however, that in the event such taxes so levied shall not provide sufficient funds for this purpose, then and in that event, said county commissioners shall levy annually against all the taxable property in Howard County a sum sufficient to make up the deficiency."

The plaintiff's water tax bills charge him with $94.95 as a front-foot levy on his property and with $13.96 on its assessed value.

When this suit was instituted, bonds had been issued, and about $82,000 of their proceeds had been used, for the installation of the water system contemplated by the series of acts to which we have referred. The contention of the plaintiff is that all of the acts are invalid. The titles of the Acts of 1933 and 1935 are said to be insufficient to meet the requirement of section 29 of article 3 of the Maryland Constitution, and the Act of 1931 is challenged on the ground that its referendum provision submitted to the voters of the special taxing district a

question involving the imposition of liability upon the entire county for the payment of the water bonds. It is alleged in the bill that while the voters in the district approved the the Act of 1931 at an election held in that year, no action was taken by the county commissioners to issue the bonds and install the water system, for which it made provision, until the act had been twice amended, such delay having resulted from legal advice to the commissioners not to proceed under the first and second acts of the series.

The titles of the three acts, which will be indicated by the years of their enactment and their chapter numbers, are as follows:

1931, chapter 394: "An Act to create a special taxing area or district in the First Election District of Howard County and to authorize the Board of County Commissioners of Howard County to borrow upon the faith and credit of said county a sum of money not exceeding seven per cent. (7%) of the assessable property in said special taxing area or district and to issue and sell coupon bonds therefor and to expend the proceeds thereof for the purpose of providing the residents of said area or district a water supply; to make necessary rules and regulations to further the purposes of this Act; to contract with the Mayor and City Council of Baltimore City or with any other responsible person, persons, partnership or corporation for a water supply, water mains and extensions, the said contract to be approved by the Public Service Commission of Maryland; and to provide for the payment of said bonds and the interest thereon by the levying of a tax upon the assessable property in said special taxing district or area herein created and a front foot charge upon all property specially benefited; and providing for the submission of this Act to the qualified voters in said special taxing district or area for adoption or rejection."

1933, chapter 506: "An Act to repeal and re-enact with amendments Sections 5, 5A and 6 of Chapter 394 of the Acts of the General Assembly of Maryland of 1931,

relating to the levying by the County Commissioners of Howard County of certain taxes upon the assessable property in the special taxing district in the First Election District of Howard County, thereby created, for the payment of water bonds and to authorize and empower said County Commissioners to condemn property for the laying of mains if permission so to do is not given said Commissioners."

1935, chapter 3: "An Act to repeal and re-enact with amendments Section 5, Chapter 394 of the Acts of 1931, as said section was amended by Chapter 506 of the Acts of 1933, relating to the levying of taxes upon the taxable property in the special taxing district in the First Election District of Howard County and if necessary upon all the taxable property of the county for the payment of the interest and for the retirement of the water bonds authorized by said Acts, also for annual rental for fire hydrants and providing that the moneys received from the sale of said bonds and taxes shall be kept in a special account."

Section 1 of the Acts of 1931 created and defined a special taxing district in Howard County. In order to provide funds for the installation of a water supply system for that area, section 2 of the act empowered the county commissioners to borrow money on the faith and credit of the county by the issuance of serial bonds, to an amount not exceeding seven per cent. of the property assessment in the district. Section 3 provided that the bonds should be issued after due advertisement and to the highest responsible bidders, and the net proceeds should be used to pay for the construction of the projected water system. By section 4 the county commissioners were authorized to contract for a water supply, mains, and extensions to serve the specified locality. Section 5 provided for "an annual front foot tax or charge, not exceeding twenty cents per front foot, for all property upon which or along which water mains are laid," and for an additional annual tax on all the property in the special taxing district, sufficient with the front-foot

tax, to pay the interest on the bonds, and the principal at maturity. Provision was made by section 5A for the issuance of bonds to pay for extensions of the water system in the district within a limit of seven per cent. of the property assessment. Section 6 related to the location of the water mains. The referendum provisions of the act were contained in section 7. The eighth and final section declared the act to be emergency legislation.

The amendments of section 5 by the Act of 1933 consisted of limitations of the front-foot tax to a maximum of 200 feet and a minimum of 30 feet for any lot, and of the general water tax to ten cents per $1.00 of assessable property. Section 5A, as amended by that act, includes a provision that the county commissioners should, within the limitations of the act, begin extending water mains in the district whenever three-fifths of the registered voters in a particular area adjacent to the water supply petitioned in writing for such extension. To section 6, the Act of 1933 added a clause conferring upon the county commissioners the right to acquire by condemnation any land needed for the construction of the water system when a purchase of such property could not be effected.

The first paragraph of section 5 as amended by the Act of 1935 was quoted at the beginning of this opinion. Provision as to how the taxes should be collected, and as to the classification of properties for front-foot taxation, were added by that amending statute.

In order to sustain the plaintiff's theory that the Act of 1931 should be regarded as wholly and permanently invalid because of the referendum provision permitting the voters of the described district to determine whether the county at large should incur liability for the local improvement, we should have to restrict unduly the effect of the amending Act of 1935. If it be assumed that the Act of 1931 invalidly attempted to enlarge the legitimate consequences of the referendum, contrary to the principles stated in the cited cases of *Bradshaw v. Lankford,* 73 Md. 428, 431, 21 A. 66, and *Levering v. Board of*

*Supervisors,* 137 Md. 281, 112 A. 301, it was clearly the intention of the Legislature to overcome that objection by the later enactment. Both the title and the body of the Act of 1935 declare an intention to subject all the taxable property in the county to levies if necessary to make up any deficiency in the proceeds of the district water taxes for the payment of the bonds to which that act and the two preceding statutes refer. There was thus a definite and direct expression of a legislative purpose, independently of the unessential referendum previously authorized, to supplement the front-foot and district tax charges with an ultimate county responsibility for the bonded indebtedness incurred for the local water supply. The validity of such a provision is supported by the decisions of this court in *Dinneen v. Rider,* 152 Md. 343, 136 A. 754, and *Dahler v. Washington Suburban Sanitary Commn.,* 133 Md. 644, 106 A. 10. The Acts of 1933 and 1935 recognize the Act of 1931 as an existing statute which, by appropriate amendment, could effectually accomplish its primary object of providing a water supply for the designated community. There is no constitutional ground for a refusal to give recognition and effect to a legislative purpose so plainly manifested by the amending acts.

The title of the Act of 1933 is said to be defective in not referring to the front-foot taxes for which that act provides. It is argued that the purpose to impose such taxes is not indicated by the reference in the title to "certain taxes upon the assessable property in the special taxing district" created by the Act of 1931. In the title of that act the proposed front-foot charge is specifically mentioned, and provision is made for it in section 5, which, as amended by the Act of 1933, provides for a "front foot tax or charge" and also for a tax on all of the assessable property in the district, to produce funds for the payment of the interest and principal of the water supply bonds. There can be no reasonable doubt that both classes of charges were intended to be signified by the words "certain taxes" used in the title,

especially when its descriptive terms are considered in connection with the title and provisions of the prior act, which was distinctly and necessarily referred to as the subject of the amending statute. It is difficult to conceive that any member of the General Assembly could have been misled by the title of the Act of 1933 into a belief that front-foot charges were not to be within the purview of section 5 as repealed and re-enacted.

It is also objected that the title of the Act of 1933 is defective because it does not describe the provision of section 5A as amended in regard to the extension of water mains whenever three-fifths of the registered voters in a particular area adjacent to the water supply should make application to that end in writing. This was a regulatory provision relevant to the general purpose to which the original act and the amending statute were directed.

The criticism of the title of the Act of 1933 on the ground of its supposed omission to refer to the front-foot tax mentioned in the act was repeated as against the title of the Act of 1935, but for the reasons already stated we must hold the similar objection in regard to that title to be not sustainable.

The provision in the Act of 1935 as to the classification of properties for the purposes of the front-foot tax is also said to render the act invalid as extending beyond the subject which its title describes. In our opinion, the provision is pertinent to the general object indicated by the title of that act and by the titles and terms of the two preceding statutes, to which it was inseparably related.

To comply with the requirement of section 29 of article 3 of the Maryland Constitution, an act need not in its title give an abstract of its contents, nor mention the various means and methods by which its general purpose is to be accomplished. But the title is sufficient if it describes the subject to which the provisions of the act are germane. *Dinneen v. Rider,* 152 Md. 343, 136 A. 754; *Baltimore v. Fuget,* 164 Md. 335, 165 A. 618;

*Home for Incurables v. Bruff,* 160 Md. 156, 153 A. 403; *Dahler v. Washington Suburban Sanitary Commn.,* 133 Md. 644, 106 A. 10; *Ruehl v. State,* 130 Md. 188, 100 A. 75; *Thrift v. Laird,* 125 Md. 55, 70, 93 A. 449; *Painter v. Mattfeldt,* 119 Md. 466, 87 A. 413; *Bond v. Baltimore,* 116 Md. 683, 82 A. 978; *Worcester County v. School Commissioners,* 13 Md. 305, 77 A. 605; *Baltimore v. Stewart,* 92 Md. 535, 48 A. 165. In accordance with the principles just stated, upon the authority of the cases cited, and of other decisions of this court, we concur in the conclusion of the Circuit Court that the statutory titles here in question are sufficient to support the validity of the enactments of which they were intended to be descriptive.

In this opinion, we have found it unnecessary to discuss the question as to the plaintiff's right to institute and maintain this suit after the completion of the water system on account of which the tax in dispute was levied, when no such action was taken before the work was begun or while it was in progress, or before the issuance of the bonds from the proceeds of which the cost of the improvement was paid.

*Decree affirmed, with costs.*