ELIZABETH CAMPBELL *v.* GEORGE A. CAMPBELL
GEORGE A. CAMPBELL *v.* ELIZABETH
CAMPBELL

[Nos. 53-56, January Term, 1938.]

*Decided April 8th, 1938.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*William Purnell Hall,* for Elizabeth Campbell.

*Vernon Cook* and *Benjamin L. Freeny,* with whom was *George Ross Veazey* on the brief, for George A. Campbell.

URNER, J., delivered the opinion of the Court.

The grounds for divorce *a vinculo matrimonii* in Maryland are prescribed by section 38 of article 16 of the Code of Public General Laws. By chapter 396 of the Acts of 1937, that section was repealed and reenacted with an amendment which provided, as an additional ground for such a divorce, that it could be decreed: "When the husband and wife shall have voluntarily lived separate and apart, without any cohabitation, for five consecutive years prior to the filing of the bill of complaint, and such separation is beyond any reasonable expectation of reconciliation." The appellee sued his wife for an absolute divorce under that provision. In his bill of complaint he alleged that he and the defendant were married on November 25th, 1907, that they voluntarily separated on or about July 25th, 1925, and have continuously lived apart since that time. The absence of

any reasonable expectation of reconciliation is also alleged.

The defendant, by demurrer, questioned the constitutionality of the Act of 1937, and, by answer, denied that the separation of herself and husband was voluntary, and alleged that it resulted from his excessive violence and his threats when she remonstrated with him about his associations with another woman, because of which she declared her intention to sue him for a divorce and the woman for the alienation of his affections. It was then threatened by him, as the answer charged, that if she brought such suits he would sell their home, resign his position, and leave the state. The answer further stated that, as the defendant was without means of support for herself and her infant son, she was forced by those threats of her husband to sign an agreement of separation, dated July 24th, 1925, which included a provision that no suit by either party "for alienation of affections or for any other grounds whatsoever" should be instituted. Reference was made in the defendant's answer to a suit brought against her by the plaintiff on October 24th, 1928, for an absolute divorce on the ground of an involuntary separation for more than three years alleged to have been caused by her cruelty. In that suit the defendant's answer denied the allegation of cruelty on her part, charged the plaintiff with brutality and adultery, and stated that she and her husband were living separately under the agreement of July 24th, 1925. The trial of the issues then presented by the pleadings resulted in a decree dismissing the suit, but the decree was not accompanied by an opinion stating the reasons for the court's conclusion.

The subsequent Act of Assembly, authorizing decrees of absolute divorce on the ground of voluntary separation of the parties for five years, became effective on June 1st, 1937, and the husband's second suit for divorce was brought on that day. In the former case his bill of complaint ignored the separation agreement, while the wife relied upon it in her answer. For the purposes of

the present suit, under the new Act of Assembly, the plaintiff depends upon the agreement as proof that the separation was voluntary. The defendant now contends that both the separation and the agreement were involuntary so far as she is concerned.

In this case the lower court decided that the Act of 1937 is constitutional and retrospective, and that the admittedly complete and continuous separation of the parties for more than five years was voluntary, and that the plaintiff was consequently entitled to a divorce *a vinculo matrimonii*. The principal appeal is from the decree giving effect to that decision. Another appeal by the defendant is from the order overruling her demurrer to the bill of complaint, and her third appeal is from an order refusing to require the plaintiff to pay for the services of the defendant's solicitor in the Circuit Court and on appeal. The order, however, directed the plaintiff to pay the costs of the record for the appeal, and the plaintiff has appealed from that requirement.

The constitutionality of the Act of 1937 is disputed upon the theory that its title is defective. In our opinion that objection is not sustainable. The act is thus described in its title: "An Act to repeal and re-enact with amendments Section 38 of Article 16 of the Annotated Code of Maryland (1924 Edition), title 'Chancery,' sub-title 'Divorce,' providing that divorce may be granted after separation under certain conditions." This is a sufficient compliance with section 29 of article 3 of the Maryland Constitution, which provides that: "Every law enacted by the General Assembly shall embrace but one subject, and that shall be described in its title." It has been held repeatedly by this court that a title is adequate which describes the act by reference to the article and section of the Code in which it is incorporated. *Mylander v. Connor,* 172 Md. 329, 191 A. 430; *Bevard v. Baughman,* 167 Md. 55, 173 A. 40; *Baltimore v. Fuget,* 164 Md. 335, 165 A. 618; *Dean v. Slacum,* 149 Md. 578, 132 A. 73; *Todd v. Frostburg,* 141 Md. 693, 119 A. 696; *Worcester County v. School Commissioners,* 113 Md. 305, 306, 77

A. 605. The title here in question distinctly indicates that separation as a ground of divorce is the subject of the enactment. The amendatory provisions of the act are germane to that subject. It is not essential that the title should summarize the contents of the act. *Toomey v. Shipley,* 172 Md. 463, 192 A. 288; *Home for Incurables v. Bruff,* 160 Md. 156, 153 A. 403; *Dinneen v. Rider,* 152 Md. 343, 136 A. 754; *Dahler v. Washington Suburban Sanitary Commission,* 133 Md. 644, 106 A. 10; *Ruehl v. State,* 130 Md. 188, 100 A. 75; *Thrift v. Laird,* 125 Md. 55, 93 A. 449; *Painter v. Mattfeldt,* 119 Md. 466, 87 A. 413.

The brief of the appellant does not argue that the act of 1937 applies only to five year voluntary separations beginning after it become operative, nor that it is invalid because of its retrospective application. But there is an argument in the appellee's brief against such possible contentions. It seems clear to us that the act is applicable by its terms to suits brought after June 1st, 1937, for a divorce on the new ground defined by the act, if the specified conditions for invoking it then exist. The separation must have been voluntary, without any cohabitation or reasonable hope of reconciliation, and have continued "for five consecutive years prior to the filing of the bill of complaint." There is no evidence in the act of an intention that the whole of the five year period of separation must be subsequent to its effective date. If, when the bill of complaint is filed, the parties "shall have voluntarily lived separate and apart" for the designated period, and the separation has been complete and is probably permanent, the court is authorized by the act to decree an absolute divorce.

In *Cole v. Cole,* 27 Wis. 531, the court had under consideration a Wisconsin statute, Laws 1866, ch. 37, which provided that whenever the husband and wife "shall have voluntarily lived entirely separate for the space of five years next preceding application for divorce, the same may be granted on the petition of either party," and it was said in the opinion: "There is nothing in the lan-

guage of this statute which would seem to require that the five years' separation must have occurred after the law took effect, and we must presume that it was intended to apply to present separations as well as future ones."

A construction of the Act of 1937 as purporting to authorize decrees of divorce for pre-existing and continuing separations does not affect its validity. It was an exercise of the ample power of the Legislature to determine the grounds upon which marriages may be judicially dissolved. The provisions of the act are concerned with remedies and not with property rights. In *Tipping v. Tipping*, 65 App. D. C. 222, 82 Fed. (2nd) 828, the Court of Appeals of the District of Columbia said: "It has been held by the highest authority that marriage is an institution of society, creating a status which may be regulated and controlled by public law; that legislation affecting the institution or annulling the relation between the parties is not within the prohibition of the Constitution of the United States against the impairment of contracts, or against *ex post facto* laws. *Maynard v. Hill*, 125 U. S. 190, 8 S. Ct. 723, 31 L. Ed. 654. In the exercise of such public authority statutes may be enacted applicable equally to past and future grounds for divorce. It is said 'n 1 *Bishop on Marriage, Divorce and Separation*, sec. 1480: 'Divorce statutes concern the good order of society. If, contemplating the interest involved as public, it is for the public order and profit that marriage be dissoluble after the transpiring of a particular *delictum* it can make no difference what was the date of the delinquency, or whether before or after the statute was enacted. Hence, when the legislative intent does not directly appear in the statutory words, they should be applied equally to past and future transactions.' "

In *Maynard v. Hill*, 125 U. S. 190, 8 S. Ct. 723, 729, 31 L. Ed. 654, cited in the opinion from which we have just quoted, the Supreme Court repeated the following statement by Chief Justice Marshall, in the *Dartmouth College Case*, 17 U. S. 518, 4 Wheat. 518, 519, 4 L. Ed. 629: "The provision of the Constitution" (as to impair-

ment of contracts by state legislation) "never has been understood to embrace other contracts than those which respect property or some object of value, and confer rights which may be asserted in a court of justice. It never has been understood to restrict the general right of the legislature to legislate on the subject of divorces."

The validity of the Act of 1937 is further supported by the decisions in *Elliott v. Elliott,* 38 Md. 357, 359; *Harrison v. State,* 22 Md. 468, and *Grinder & Baugher v. Nelson,* 9 Gill 299.

The important question of fact in this case is whether the separation of the parties has been voluntary. Unless it should be so characterized, the plaintiff is not entitled to a divorce under the Act of 1937, which the suit invokes. While the separation had continued for a much longer period than five years, the allegation that it was voluntary is disputed in the answer and in the evidence. When the agreement of separation was signed on July 24th, 1925, the marital relations of the parties had been suspended for several weeks, although the husband's removal from the home did not occur until that date. According to the testimony of the wife and her son, then fourteen years old, she was the victim of a violent attack by her husband, upon his return home one night in the latter part of June, 1925, when she complained of his relations with another woman. The incident was wholly denied by the husband, but the testimony of his wife and son was corroborated, in important details, by that of a neighbor who witnessed the final phase of the assault. Apart from the effect of the subsequently executed agreement, it could not properly be held that a separation caused by such misconduct of the husband was mutually voluntary within the purview of the statute. This is the view which the Supreme Court of Wisconsin has expressed in regard to the application of the nearly identical act of that state to which we have referred. *Jakubke v. Jakubke,* 125 Wis. 635, 104 N. W. 704; *Williams v. Williams,* 122 Wis. 27, 99 N. W. 431; *Sanders v. Sanders,* 135 Wis. 613, 116 N. W. 176; *Krause v. Krause,* 177 Wis.

165, 187 N. W. 1019; *Rooney v. Rooney*, 186 Wis. 49, 202 N. W. 143. Cases cited to support the argument to the contrary were concerned with statutes which did not require the separation to have been voluntary.

But in this case the fact that the parties executed an agreement of separation, and for twelve years have abided by its terms, is a highly important circumstance to be considered upon the question now requiring decision. It was recited in the agreement that "unfortunate and irreconcilable differences have arisen between the parties which render it inadvisable that they further continue to live together," that they have "agreed to separate and live apart from each other until due action in the matter of a divorce can be had," that the husband had agreed to pay the sum of $30 per week to the wife for the support of herself and their infant child, and make payments sufficient to reduce the mortgage on their home to $1,000, and had agreed to convey to his wife all his interest in that property, and to make and deliver a promissory note for his indebtedness of $700 to the son; and that the wife had agreed to surrender the $2,500 note of her husband which she held, after the reduction of the mortgage on the home to $1,000 had been accomplished. The following provisions then appear in the agreement:

"That in consideration of the said premises the said wife hereby releases her said husband from all obligations of further support, and that she also agrees that she will not at any time contract debts on the credit of the said husband, and that in any action for divorce growing out of this marriage she will not make any claim for any alimony or counsel fees, other than the Thirty ($30.00) a week above mentioned, subject to the limitations set forth in the last paragraph hereof.

"That the wife shall have the control and custody of the said infant child of the parties hereto, except that the husband shall have at all reasonable times free access to the said child.

"That neither of them shall interfere with or molest

the other in any manner whatsoever, or with any of his or her associates or friends, and that no suits at law or in equity will be brought by either of the parties, for alienation of affections or for any other grounds whatsoever.

"That in the event of any divorce being granted the parties hereto and the remarriage thereafter of the said wife, then this agreement shall cease and determine and be of no effect whatsoever, so far as it applies to the wife, but party of the first part shall in no way be relieved for the support of the child."

In pursuance of that agreement the title to the home property was conveyed to the defendant, the mortgage was reduced to the stipulated extent, the note for the son was given and later paid, the plaintiff's note to his wife was surrendered, and she has received the support payments agreed upon, except that after the son reached his majority the amount was abated from $30 to $20 a week. No objection appears to have been made to that reduction. The alienation of affections suit which the wife had threatened, and to which evidently one of the provisions in the separation agreement had reference, was not in fact instituted, and, when the plaintiff brought his suit for divorce in 1928, the defendant, in deference to the agreement, made no claim for alimony or counsel fees.

It was contemplated by the agreement that it would be followed by a divorce suit. The plaintiff testified that his wife had declared her intention to sue for a divorce. But she refrained from taking such action, and, after the lapse of three years from the beginning of their separation, he instituted the divorce proceeding of 1928. In disregarding the separation agreement for the purposes of that suit, the bill of complaint was inconsistent with the plaintiff's present theory that the agreement proved the separation to have been voluntary and not compulsory. But the defendant's reliance upon the agreement in the former suit was consistent only with an understanding that it tended to prove a voluntary sepa-

ration and was therefore available to her as defensive proof. However difficult it may be to reconcile the positions then assumed by the parties with their present contentions in regard to the effect of the separation agreement, we have to consider the fact that, since the dismissal of the 1928 suit, the parties have continued for nine years to live separately and to recognize the agreement as operative. While the plaintiff was responsible for the original separation, and the defendant appears to have signed the agreement in order to secure pecuniary and property benefits which might have been unobtainable if the husband's alternative proposal to abandon his employment and leave the city had been carried into effect, we are unable to hold, in view of the defendant's long continued recognition and dependence upon the agreement, that the separation therein referred to was involuntary during the whole of the twelve year period which has elapsed since it was executed.

The right of the plaintiff to a divorce is further disputed upon the ground of adultery alleged to have been committed by him before and since his separation from the defendant. It is unnecessary to decide whether such misconduct of the plaintiff would disentitle him to a divorce under the Act of 1937, because the charge is not satisfactorily sustained by the evidence. Certain admissions were attributed to the plaintiff by several witnesses, but such testimony would not be an adequate basis for a determination of that issue. *Fisher v. Fisher,* 95 Md. 314, 318, 52 A. 898; Code art. 16, sec. 40. There was no sufficient proof of circumstances justifying a conclusion, as against opposing testimony, that the plaintiff was actually guilty of adultery. The evidence does not satisfy the requirement that proof of such an offense must be clear and convincing. *Lang v. Lang,* 155 Md. 464, 471, 142 A. 485; *Cashell v. Cashell,* 153 Md. 170, 171, 137 A. 904; *Kremis v. Kremis,* 163 Md. 223, 161 A. 255; *Wendel v. Wendel,* 154 Md. 11, 139 A. 573; *Totten v. Totten,* 150 Md. 700, 701, 137 A. 916.

The decree of divorce will be affirmed, but we are un-

able to approve the order refusing to make provision for the compensation of the defendant's counsel for his services in this litigation in the Circuit Court and on appeal. Such an allowance to the defendant for her counsel was considered by the court to be precluded by the stipulation in the separation agreement, that "in any action for divorce growing out of this marriage she will not make any claim for any alimony or counsel fees." When that agreement was signed, the appellee, according to the evidence in the record, had no ground upon which he could maintain a divorce suit against his wife. At that time she alone could have prosecuted successfully a suit affecting the continuance of their marital relationship. If she had brought such an action, the stipulation in regard to counsel fees would be clearly applicable. *Melson v. Melson,* 151 Md. 196, 134 A. 136. But the only efforts to dissolve the marriage have been the successive suits which the husband has instituted. The pending one asserts, under the Act of 1937, a cause of divorce which was not recognized by the law of Maryland when the parties entered into the agreement of 1925, upon which the plaintiff relies. The most important questions involved in the present suit could not then have been anticipated. It was presumably not intended by the agreement that the wife should have to defend at her own expense a series of divorce suits which the husband might bring against her in the future. In our opinion she is entitled in this second suit, which has been brought under changed statutory conditions, to the allowance which is ordinarily made in divorce cases for the compensation of the wife's counsel. *McClees v. McClees,* 160 Md. 115, 130, 152 A. 901; *Daiger v. Daiger,* 154 Md. 501, 140 A. 717; *Serio v. Serio,* 170 Md. 542, 185 A. 548; *Cook v. Cook,* 166 Md. 704, 171 A. 722.

The order relating to the counsel fee and to the costs of the record on appeal will therefore be reversed in so far as it disallows the fee, and affirmed in regard to its allowance for the costs.

The provision in the agreement as to the maintenance

payments to the defendant will not be affected by the divorce, as that stipulation is in terms operative until her remarriage. In *Melson v. Melson, supra,* 151 Md. 196, at page 205, 134 A. 136, 139, it was said in the opinion of the court, as delivered by Judge Parke: "The agreement of separation was valid as the agreed equivalent of future maintenance by the husband of the wife, although it was invalid as a contract providing for the relinquishment of the right and duty of cohabitation of the spouses." The Act of 1931, ch. 220 (Code [Supp. 1935] art. 16, sec. 39 A), provides: "Any deed or agreement made between husband and wife respecting support, maintenance, property rights, or personal rights, or any settlement made in lieu of support, maintenance, property rights or personal rights shall be valid, binding and enforceable to every intent and purpose, and such deed or agreement shall not be a bar to an action for divorce, either *a vinculo matrimonii* or *a mensa et thoro,* as the case may be, whether the cause for divorce existed at the time or arose prior or subsequent to the time of the execution of said deed or agreement, or whether at the time of making such deed or agreement the parties were living together or apart."

> *Decree affirmed. Order affirmed in part and reversed in part, and cause remanded for the passage of an order in conformity with this opinion; the appellee to pay the costs.*

OFFUTT, J., concurs except as to the allowance of a fee for the defendant's solicitor.